F. V. DANIEL v. THE W. U. TEL. CO.

(Case No. 4558.)

1. TELEGRAPH MESSAGES — MEASURE OF DAMAGES.— When the meaning of a telegraphic message is unknown to the company's agent who receives and transmits the same, being in cipher, it cannot be assumed that the company could know that any pecuniary loss would be the natural or necessary re-

sult of a failure to send such message; and in such a case, upon a breach of contract to transmit and deliver, the sender can recover only nominal damages, as the amount paid for sending the same. Following Candee v. W. U. Tel. Co., 34 Wis., 471, and other cases cited.

2. SAME — NEGLIGENCE. — In such a suit, general allegations in the petition of a vague and indefinite character, as to the employment of an incompetent operator by the company, when disconnected with any specific statement of facts showing acts of negligence resulting in loss, will not be deemed sufficient to support a claim for exemplary damages.

APPEAL from Grayson. Tried below before the Hon. Joseph Bledsoe.

Suit by F. V. Daniel against the Western Union Telegraph Company for damages for negligently failing to deliver two messages delivered to it by the appellant at Sherman, Texas, for transmission to the city of New York, laying his actual damages at $2,181.25, which included $7.25, charges paid for transmitting messages. Gross and wilful negligence was alleged, and $2,500 exemplary damages claimed therefor.

Appellee demurred generally and specially. The general demurrer was waived, but the special exceptions were sustained, to which appellant excepted.

The appellee having admitted the demand for tolls, $7.25, judgment was rendered for that amount and costs against the company.

The first assigned error was as follows: "The court erred in sustaining the special exception to that portion of plaintiff's petition setting up and claiming damages for non-delivery of message of date November 18, 1879, copied in the petition, on the ground that the message was in cipher and unintelligible to any one unacquainted with the vernacular, and because the damages claimed could not have been understood to naturally flow from the failure to deliver."

It was alleged that appellant was engaged in the business of buying and selling cotton in Sherman, Texas, and that his occupation was well known to appellee; that he was in New York in the fall of 1879 to remain during the cotton season; that on November 17, 1879, he learned of a disturbance in his office in Sherman, that would necessitate his return if not adjusted; that on that day he sent to his agent in Sherman a message as follows: "I have received your letter of the 12th instant — anxious about office affairs — please report approximate profits since 6th instant. What cotton have you to offer — Quote your market — Answer immediately — Don't wait night message." That said agent, on November 18, 1879, at 10:30 in the forenoon, delivered to the appellee the following telegrams in cipher for appellant in New York: "Rogue, clover, office saluting

now renovating rafting bodily approximate since civilian everything selfish sky about returning weather fine, all well;" the agent paying the bills, $3.20; which message was, when translated, which appellant understood how to do, as follows: " Telegram of yesterday received at 8 A. M.   Office all right now — first rate in every respect — the profits since the 6th instant approximate $2,400 — everything turns out well — you can use your discretion about returning — weather fine — all well."

That appellant remained in New York at his place of business till late in the evening of the 18th, awaiting a reply to his message. That the message was never delivered to him in New York, and, receiving no reply to his message of the 17th, he left New York in the evening of the 18th and hastened home, which he would not have done had the message of his agent been delivered to him.   That he was at the time doing a fine business in New York, which he left on account of the failure to receive the message, and returned home, thereby losing his time and being at the expense of returning home, the reasonable value of which was $500, whereby he was damaged in that amount, and also the amount paid in tolls, $3.30.

It was alleged that appellee well knew the business of a cotton broker, and that to make his business successful his contracts must be made with great celerity and accuracy; that appellee knew appellant, in all important telegrams, used cipher dispatches, and that he only used them in matters of importance, and that the cipher code was used by cotton brokers in transacting business of importance in their calling.   That appellee knew messages in cipher as used by cotton brokers were of importance, and demanded prompt delivery.

The exception to which the first assignment related was as followlows: " And for special exception to so much of plaintiff's petition as seeks a recovery of damages for failure to deliver message to plaintiff sent him on the 18th day of November, 1879."

Defendant says that the same is insufficient in law, and that the dispatch was in cipher, as pleaded by plaintiff, and totally unintelligible to any one unacquainted with the vernacular, and no such damages as that claimed by plaintiff could be understood to naturally flow from a failure to deliver.

The second assignment of error was as follows: " The court erred in sustaining the special exception to that portion of plaintiff's petition setting up and claiming damages for the non-delivery of message of date December 15, 1879, copied in the petition, on the ground that the dispatch was in cipher and unintelligible to any one

not acquainted with the key to said cipher, and because no such damage was contemplated at the time the defendant received the dispatch, and because the damages were remote and depended upon the action of a third party."

The special exception to which this assignment related was as follows: "And for special exceptions to so much of plaintiff's petition as seeks a recovery of damages for failure to deliver message of date December 15, 1879, defendant says that the said dispatch was in cipher, as pleaded by plaintiff, and totally unintelligible to any one not having the key to said cipher; and further, that no such damage as that claimed by plaintiff was contemplated at the time it received said dispatch. The damages claimed are remote, and dependent upon the action of a third party."

It was alleged that appellant delivered to the appellee, December 15, 1879, at 11:45 o'clock A. M., in Sherman, Texas, for transmission to appellant's agent in New York, the following message in cipher: "Pintle your blushes, bales account marmalade against it magazine if you gratitude await development must sell before market declines before apostle if fight oscillation," which, when translated by appellant's agent, would have read as follows: "We will ship you five hundred and fifty bales of cotton on account. Sell for April delivery six hundred bales of cotton against it. You can sell at your discretion. If you think we shall be higher, await developments. Must sell before market declines below 13½. If market dull and declining, sell immediately."

That the message was not delivered to appellant's agent in New York until 9 o'clock A. M. of December 16, 1879, when it should have been delivered within business hours of December 15th.

That if it had been promptly delivered to appellant's agent, as appellee contracted it should be done, said agent could and would have sold the cotton mentioned in the message at thirteen and a half cents per pound, there being two hundred and seventy thousand pounds.

That at the time the message was received by said agent, cotton had declined to twelve and eighty-eight hundredth cents per pound, and appellant was forced to sell at that price, being the best he could do, as the market continued to decline; the price obtained being the highest that could have been realized.

That by the failure to deliver the message in the time it should have been done, appellant sustained a loss of so much per pound, aggregating $1,674. That appellant paid tolls on the message $3.95.

See statement under first assignment of error respecting appellee's. knowledge of the character of the message.

*Woods, Wilkins* and *Cunningham,* and *Cockrell & Cockrell,* for appellant, cited: Western Union Telegraph Co. *v.* Weitung. Court of Appeals, Galveston term, 1881; Scott & Jarnigan, Law of Telegraphy, secs. 406–408; Rittenhouse *v.* I. L. T. Co., 44 N. Y., 263; Tyler *v.* W. U. T. Co., 60 Ill., 421; N. Y. W. P. T. Co. *v.* Dryburg, 35 Tenn., 298.

*Stemmons & Field,* for appellee, cited: McCall *v.* The W. U. Tel. Co., 7 Abbott's New Cases, 151; Shields *v.* Was. Tel. Co., 9 West. L. J., 5; Landsberger *v.* Magnetic Tel. Co., 32 Barb., 530; United States Tel. Co. *v.* Gildersleeve, 29 Md., 232; Baldwin *v.* U. S. Tel. Co., 45 N. Y., 744; Candee *v.* W. U. Tel. Co., 34 Wis., 471.

Walker, P. J. Com. App.— The rule for the measure of damages applicable to common carriers for the transportation of goods, and to telegraph companies in the transmission of messages in a general form, is that laid down in the case of Hadley *v.* Baxendale, 9 Exch., 341; a rule quite generally accepted as correct, both in England and America, and often quoted or cited in text-books with approval (1 Sedg. Meas. of Dam., 230*n*, 236*n*, 237*n*), and likewise very generally referred to and adopted in the judicial opinions of courts of last resort. The rule referred to is quoted, with the reasoning in support of it, from the opinion delivered by Alderson, B., in the case of Western Union Telegraph Co. *v.* Weitung, sec. 801, W. & W. Cond. Decisions. The rule itself is thus stated: " Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract should be such as may be fairly and reasonably considered either arising naturally, *i. e.,* according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as to the probable result of the breach of it."

In the case of Baldwin *v.* The U. S. Telegraph Co., 45 N. Y., 750, Allen, J., discussing the rule of law applicable to the measure of damages for which telegraph companies may be liable, said: " Whenever special or extraordinary damages, such as would not naturally or ordinarily follow from a breach, have been awarded for the non-performance of contracts, whether for the sale or carriage

of goods, or for the delivery of messages by telegraph, it has been for the reason that the contracts have been made with reference to peculiar circumstances known to both, and the particular loss has been in the contemplation of both at the time of making the contract, as a contingency that might follow the non-performance. In other words, the damages given by way of indemnity have been the natural and necessary consequences of the breach of contract, in the minds of the parties, interpreting the contract in the light of the circumstances under which it was made; and when a special purpose is intended by one party, but is not known to the other, such special purpose will not be taken into account in the assessment of damages for the breach. The damages in such cases will be limited to those resulting from the obvious purpose of the contract. Citing Cory v. Thames Iron Works, 3 L. R., Q. B., 181; Leonard v. N. Y. & B. Tel. Co., 41 N. Y., 544; Messmore v. N. Y. Shot and Lead Co., 40 N. Y. 422; Hadley v. Baxendale, 9 Exch., 341; U. S. Tel. Co. v. Gildersleeve, 29 Md., 232; Griffin v. Colver, 16 N. Y., 493; Landsberger v. Magnetic Tel. Co., 32 Barb., 530.

Such limitation of the damages, therefore, must be held to apply with conclusive force to enigmatical cipher telegrams, the meaning of which is a sealed mystery to the operator. In support further of this proposition, it is laid down in 6 Wait's Act. & Def., 19, on the authorities which are there cited, that " where the import of a telegraphic message is wholly unknown to the company's agent to whom the same is delivered for transportation, it cannot be assumed that he had in view any pecuniary loss as the natural or probable result of a failure to send such message; and in such case, upon a breach of the contract to transmit and deliver, the sender can recover only nominal damages, or the amount paid for sending the message." Citing Candee v. Western Union Tel. Co., 34 Wis., 471; 17 Am. Rep., 452; Beaupré v. Pac., etc., Tel. Co., 21 Minn., 155; S. C., 24 W. R., 949; 45 L. J., P. Div., 682; 1 L. R., Comm. Pleas Div., 326; 17 Eng. Rep., 286; Saunders v. Stewart, 35 L. T. (N. S.), 370.

It was assigned as error that the court erred in sustaining special exceptions to plaintiff's petition as to exemplary damages. The ground relied on in the petition as a basis for such damages was, that though the defendant was frequently warned of the incompetency and gross negligence and carelessness of the operators in the appellee's employ, in sending messages contracted to be sent by appellee, it continued said operators in its employment. That prior to the date of the messages in question in this suit, appellant and others had repeatedly called the attention of the appellee to the

great losses they were subjected to by the bad and incorrect services of the appellee.

Allegations of negligence in the employment and selection of incompetent operators, thus vague and indefinite, and disconnected with allegations of facts showing acts on their part of a negligent character resulting in losses to the patrons of the company, or of losses incurred therefrom by the plaintiff on previous occasions, cannot, we think, be deemed sufficient to support a claim for exemplary damages. The rule on this subject underwent discussion in the case of Hays *v.* H. & G. N. R. R. Co., 46 Tex., 279, and we are of opinion that the plaintiff's allegations do not bring this case within the principles which are there laid down which entitle a party to claim exemplary damages.

We conclude that the judgment ought to be affirmed.

AFFIRMED.

[Opinion adopted April 29, 1884.]