JULIUS D. ABELES, Appellant, v. WESTERN UNION TELEGRAPH COMPANY, Respondent.

St. Louis Court of Appeals, November 19, 1889.

Damages. When a telegraphic message is sent in cipher, and the telegraph company is not apprised of its meaning, only nominal damages can be recovered for mere delay in delivery by the company, not equivalent to non-delivery; and in case of non-delivery, or delay in delivery substantially amounting to non-delivery, the cost of the message with interest constitutes the measure of damages.

*Appeal from the St. Louis City Circuit Court.*—Hon. D. D. FISHER, Judge.

AFFIRMED.

*Sale & Sale*, for the appellant.

Plaintiff is entitled to substantial damages. *Markel v. Tel. Co.*, 19 Mo. App. 80; *Milliken v. Tel. Co.*, 18 N. E. Rep. 291; *Tel. Co. v. Du Bois*, 21 N. E. Rep. 4. The special damages alleged in the petition are the direct and proximate consequence of defendant's breach of this dual obligation to plaintiff. Cases cited *supra; Wadsworth v. Tel. Co.*, 86 Tenn. 695; *Fraser v. Tel. Co.*,

4 South. Rep. 831; *Alexander v. Tel. Co.*, 3 Law Rep. Ann. 71; *Tel. Co. v. Longwill*, 21 Pac. Rep. 339. The fact that the dispatch was in cipher will not prevent a recovery of substantial damages. *Wadsworth v. Tel. Co., supra; Daugherty v. Tel. Co.*, 75 Ala. 168; *Tel. Co. v. Way*, 83 Ala. 542; *Tel. Co. v. Reynolds*, 77 Va. 173; *Hart v. Tel. Co.*, 66 Cal. 579; *Tel. Co. v. Hyer Bros.*, 22 Fla. 637.

*Cochran, Dickson & Smith*, for the respondent.

Nothing beyond nominal damages, or the sum paid for transmission, can be recovered for neglect in delivery of a cipher message, the meaning of which is not communicated to the company. *Candee v. Tel. Co.*, 34 Wis. 471; *W. U. Co. v. Martin*, 9 Bradwell, 587; *Daniel v. W. U. Co.*, 61 Tex. 452; *Behm v. W. U. Co.*, 8 Bissell, 131; *Sanders v. Stuart*, 1 C. P. Div. 326; *Beaupre v. Tel. Co.*, 21 Minn. 155; *Mackey v. Tel. Co.*, 16 Nevada, 222; *Landsberger v. Magnetic Co.*, 32 Barb. 530; *Gildersleeve v. Tel. Co.*, 29 Md. 250; *Belun v. Tel. Co.*, 8 Cent. Law J. 445; *Shields v. Tel. Co.*, 9 West. L. J. 283; *Hadley v. Tel. Co.*, 15 N. E. Rep. 845.

THOMPSON, J., delivered the opinion of the court.

The court sustained a demurrer to the following petition, and the plaintiff has appealed: "Plaintiff states that defendant is a corporation duly organized, and is, and at all times hereinafter mentioned was, engaged in the business of telegraphing for hire, between the city of St. Louis, in the state of Missouri, and the city of San Francisco, in the state of California, and had an office in the city of St. Louis, Missouri; that, on or about May 19, 1888, the plaintiff was a stockholder in the Black Oak Mining and Milling Company, a corporation under the law of Illinois, owning and operating a gold mine in Tuolumne county, California; that the

capital stock of said corporation consisted of three hundred thousand shares of the par value of ten dollars a share.

"And plaintiff states that, being a stockholder in said corporation as aforesaid, he employed one M. Rich, an expert in mines and mining properties, to go to said county of Tuolumne, in California, to examine said mine and report thereon to plaintiff by telegraph; that for the purpose of receiving such message from said M. Rich, the plaintiff adopted as his name the word "Magnate," which word, or name, was duly entered by defendant in its register book at its office in St. Louis, Missouri, as signifying and standing for the name of plaintiff; that said register is kept by defendant for the purpose of identifying its patrons who desire messages sent to them under fictitious names; that afterwards said M. Rich made an examination of said mine, and on May 23, 1888, telegraphed to plaintiff from San Francisco, California, the following message in cipher, to-wit:

'SAN FRANCISCO, CAL., May 23, 1888.
'To Magnate, St. Louis, Mo.:
'Emperor, Empress, Iniquity, Aback, Mutineer, Dish, Chaffing, Magister, Bunnel.
'(Signed.)                              M. RICH.'
'That said message when translated reads as follows:
'SAN FRANCISCO, CAL., May 23, 1888.
'To J. D. Abeles. St. Louis, Mo.: Mine does not look so well as I expected; mine is being badly managed; I advise you to sell. Black Oak Mine is worth less than fifty thousand dollars.
'(Signed.)                              M. RICH.'
"That said message was delivered to defendant's agent at San Francisco, who was then and there informed by said Rich that said message was of great importance, and the usual charge of one dollar for transmission and delivery of messages to St. Louis, Missouri, was made,

and paid by plaintiff to defendant ; that in consideration of such payment the defendant undertook to transmit and deliver said message to plaintiff with due and proper care and diligence.

"Plaintiff states that said message was correctly transmitted and received by defendant at its St. Louis office, but that owing to defendant's negligence .and carelessness and want of diligence, said message 'was not delivered to plaintiff until the fourth day of June, 1888.

"Plaintiff states that on May 23, 1888, the day when said telegram should have been delivered, he owned and held nineteen hundred and fifty (1950) shares of said stock in said mining company, worth in the market on said day fifty cents per share ; that but for the negligence and carelessness of defendant as aforesaid, he could and would have sold his said stock for the sum of nine hundred and seventy-five ($975) dollars ; that thereafter, in consequence of his not hearing from said Rich prior to June 4, 1888, he sold his said stock at and for the best price obtainable, at the times, and for the prices following, to-wit :

" On May 25, 1888, 600 shares at 37½ cts. a share.

" On May 28, 1888, 500 shares at 35 cts. a share.

" On May 28, 1888, 100 shares at 32½ cts. a share.

" On May 28, 1888, 500 shares at 30 cts. a share.

" On June 5, 1888, 250 shares at 28¾ cts. a share; aggregating in amount the sum of six hundred and fifty-four dollars and thirty seven and one-half cents.

"That by reason of the premises the plaintiff has been damaged in the sum of three hundred and twenty dollars and sixty-two and one-half cents, which sum plaintiff heretofore, to-wit, on July 2, 1888, demanded of defendant, but which defendant refused to pay. Wherefore plaintiff asks judgment against defendant for the sum of three hundred and twenty dollars, sixty-two and one-half cents, with interest from July 2, 1888, and for costs of suit."

The question thus presented for decision is whether where a telegraph message is delivered to the agent of a telegraph company *in cipher*, and the agent is not apprised of the meaning of the words, and is not advised of the damages which will probably ensue to the person to whom the message is directed in the case of a non-delivery or of an unreasonable delay in delivering,—substantial damages can be recovered of the company. The question of the liability of a telegraph company for delay in delivering a cipher dispatch, or for the non-delivery of such a dispatch, has never been before the courts of this state, so far as we know.

We are of the opinion that the measure of damages in such a case is that laid down in the leading case of *Hadley v. Baxendale*, 9 Exch. 341, which is that, where two parties have made a contract which one of them has broken, the damages which the other ought to recover in respect of such breach of contract should be either such as may fairly and substantially be considered as arising naturally, that is, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time when they made the contract, as the probable result of the breach of it. Where the agent of a telegraph company receives for transmission a dispatch, the meaning of which is unknown, no consequential damages, such as are sought to be recovered in this case, can be fairly regarded as arising naturally, that is, in the usual course of things, from a failure to deliver the message ; nor can such damages be supposed to have been in the contemplation of the sender of the message and the agent of the company who received it, at the time when it was received for transmission.

Re-affirming this doctrine and speaking with reference to a case where the dispatch, though not in cipher, was in terms not calculated to advise the company that

extraordinary care or speed was expected in transmitting the dispatch, it was said by ALLEN, J., in the court of appeals of New York: "Whenever special or extraordinary damages, such as would not naturally nor ordinarily flow from a breach, have been awarded for the non-performance of contracts, whether for the sale or carriage of goods, or for the delivery of messages by telegraph, it has been for the reason that the contracts have been made with reference to peculiar circumstances known to both, and the particular loss has been in the contemplation of both, at the time of making the contract, as a contingency that might follow the non-performance. In other words, the damages given by way of indemnity have been the natural and necessary consequences of the breach of contract, in the minds of the parties, interpreting the contract in the light of the circumstances under which, and the knowledge of the parties of the purpose for which, it was made; and when a special purpose is intended by one party, but is not known to the other, such special purpose will not be taken into account in the assessment of the damages for the breach. The damages in such cases will be limited to those resulting from the ordinary and obvious purpose of the contract. *Baldwin v. United States Telegraph Co*, 45 N. Y. 744: s. c., 6 Am. Rep. 165, 169.

Applying this rule of damages, we find that several authoritative courts have held that, in the case of an unreasonable delay in delivering a cipher dispatch the terms of which have not been communicated to the telegraph company, the plaintiff can recover at most nominal damages, or, as some hold, the amount received for transmission. *Sanders v. Stuart*, 1 C. P. Div. 326; s. c., 35 L. T. (N. S.) 370; *Candee v. Western Union Telegraph Co.*, 34 Wis. 471; s. c., 17 Am. Rep. 425; *Daniel v. Western Union Telegraph Co.*, 61 Tex. 452; s. c., 48 Am. Rep. 305; *Western Union Telegraph Co. v.*

*Martin*, 9 Bradw. (Ill.) 587; *Behm v. Western Union Telegraph Co.*, 8 Biss. (U. S.) 131.

We have been cited to three opposing decisions,— *Western Union Telegraph Co. v. Reynolds*, 77 Va. 173; s. c., 46 Am. Rep. 715; *Western Union Telegraph Co. v. Way*, 83 Ala. 542; s. c., 4 South. Rep. 844; *Western Union Telegraph Co. v. Hyer*, 22 Fla. 637; s. c., 1 Am. St. Rep. 222. These decisions were all rendered by divided courts. They either ignore, or seek to restrain, the rule of damages laid down in *Hadley v. Baxendale*, 9 Exch. 341, and they do not commend themselves to our approval.

Aside from the reasons which support the rule of damages in *Hadley v. Baxendale*, there is here a question of public policy to which we could not shut our eyes if we were in doubt upon the question. Under any other rule, where a cipher dispatch is delivered to a telegraph company for transmission, and not translated to them, and there is a delay in delivering it or a total failure to deliver it, the door is open to unlimited fraud upon the company. The evidence of its meaning is entirely in the breast of the sender and person to whom it is sent. They can construct any meaning which they may choose, and, upon the meaning thus constructed they may, by evidence which the company will be powerless to rebut, construct any fabric of facts on which to build an action for damages which they may see fit.

While telegraph companies are not common carriers, their duties are analogous to those of common carriers; and the well-known rule, in regard to the liability of a common carrier in the case of goods of such a peculiar character, is that extra precautions must be taken in carrying or storing them, and that the carrier is not liable for the failure to take such extra precautions where a knowledge of the nature of the goods was not communicated to him. If the shipper wishes to

charge the carrier with the peculiar degree or kind of diligence, which the extraordinary nature of the property requires, he is bound, in reason and justice, to apprise the carrier of the nature of the goods. Upon the same principle it has been suggested that it would be a fair conclusion in a case of this kind that in order to charge the telegraph company with any extraordinary damages which might accrue for its failure promptly to transmit a cipher message, the sender ought, in reason and in justice, at least to apprise the carrier of the translation of the message.

In respect of the exact damages to which the plaintiff is entitled on this petition, we incline to think that the proper view is that, where the delay has not been so great as to amount to a substantial failure of the telegraph company to perform the duty which it has undertaken and for which it has been paid, the plaintiff can recover nominal damages only. But where the delay has been so great as to amount substantially to a failure to perform the duty undertaken, we are of opinion that the proper measure of damages in such a case as the one before us is the sum paid for the transmission of the message, with interest. This was the rule of damages laid down by the supreme court of Wisconsin in *Candee v. Western Union Tel. Co.*, 34 Wis. 471; s. c., 17 Am. Rep. 452, where there was a total failure to deliver the message. In the present case, the message was delivered to the defendant's agent at San Francisco, for transmission to the plaintiff at St. Louis. A delay of eleven days supervened in its delivery, which the demurrer admits was owing to the negligence of the defendant. We know judicially that a letter will come from San Francisco to St. Louis in half of the time in the ordinary course of mail. Such a delay should be regarded, as a conclusion of law, as tantamount to a non-delivery; and the measure of damages in such a case should be the amount paid for transmission, with

interest from the date of demand, or, in case of no demand, from the date of the bringing of this action.

In strictness upon the record the plaintiff is therefore entitled to recover one dollar with interest. But the counsel for both parties have stated at the bar that the record has been brought here in the present shape for the sole purpose of testing the right of the plaintiff to recover substantial damages beyond the cost of transmitting the message. The plaintiff, by his counsel, having thus waived the right to recover nominal damages, or the amount paid for the transmission of the message, and our opinion on the main question being the same as that of the circuit court, the judgment will be affirmed. It is so ordered. All the judges concur.