## JUNE TERM, 1893. 527

Western Union Telegraph Co. v. C. M. Wilson.—Opinion of Court.

WESTERN UNION TELEGRAPH COMPANY, APPELLANT,
vs. CHARLES M. WILSON, APPELLEE.

### TELEGRAPH COMPANIES—CIPHER MESSAGE—DAMAGES.

The following rule, formulated in Hadley vs. Baxendale, 9 Exch. 341:
"Where two parties have made a contract which one of them
has broken, the damages which the other party ought to re-
ceive in respect of such breach of contract should be either
such as may fairly and substantially be considered as arising
naturally, *i. e.*, according to the usual course of things. from
such breach of contract itself, or such as may reasonably be
supposed to have been in the contemplation of both parties at
the time they made the contract, as the probable result of the
breach of it:" *Held*, to be applicable to the contracts of telegraph
companies for the transmission and delivery of telegraphic
messages; and, consequently, that for its breach of a contract
to transmit or deliver an *unexplained cipher*, or otherwise *un-
intelligible* message, such company is liable only for nominal
damages, or, at most, for the sum paid it for the transmission
and delivery thereof. *Western Union Tel. Co, vs. Hyer
Bros.*, 22 *Fla.*, 637, 1 *South. Rep.* 129, *overruled.* Mr. Justice
Mabry dissenting.

Appeal from the Circuit Court for Escambia county.

The facts of the case are stated in the opinion of
the court.

*Mallory & Maxwell* for Appellant.

*John C. Avery* for Appellee.

TAYLOR, J. :

The appellee sued the appellant in the Circuit Court
of Escambia county, in case, for damages for its fail-
ure to transmit and deliver a telegraphic message in

cipher. The suit resulted in a judgment for the plaintiff in the sum of $688.88. and therefrom from the defendant telegraph company appeals.

The declaration alleges as follows: "That the Western Union Telegraph Company, a corporation, the defendant, on the 12th day of December, 1887, was engaged in the business of transmitting telegraphic messages between Pensacola, Florida, and New York, in the state of New York, and in the delivery thereof to other cable and telegraph companies for transmission to Liverpool, England, where the said plaintiff had a regular merchant-broker or agent, to-wit: one A. Dobell, through whom the plaintiff negotiated, by means of such messages, the sale in Europe of cargoes of lumber and timber, the plaintiff being then and there a timber and lumber merchant at the city of Pensacola. That on said day the plaintiff delivered to the defendant, and the defendant received from him at its office in the city of Pensacola, and undertook to transmit, and cause to be transmitted, and it was its duty to transmit, and cause to be transmitted, to the said A. Dobell the following cipher message: 'Dobell, Liverpool: Gladfulness — shipment — rosa — bonheur — luciform—banewort—margin,' which the said Dobell would have understood, and the plaintiff intended to be an offer of a cargo of lumber and timber from said port of Pensacola for sale through the said Dobell in Europe, and the said Dobell would have sold the same for the plaintiff on the terms of said offer at a profit to the plaintiff of twelve hundred dollars, but the defendant failed and neglected to send the said message in violation of its duty to the plaintiff, and to the plaintiff's loss of $1,200," and therefore he sues, etc.

At the trial the plaintiff, over the defendant's objection, was permitted to testify, in establishment of the

damages claimed, that he had to sell his cargo of lumber in Europe upon the market for the best price he could get, which was fifty two shillings a load, and which amounted to $630.84 less than the price at which *he offered same for sale in the message failed to be sent.* The overruled objection of the defendant to this testimony was, that the damage sought to be shown thereby was too remote, and was not in the contemplation of the parties at the time of the alleged making of the contract for the transmission of said message. To this ruling the defendant excepted, and it is assigned as error. The question presented is, what is the proper measure of damages to be recovered of a telegraph company holding itself out to the service of the public for hire as the transmitter of messages by electricity, upon its failure to transmit or deliver a message written in cipher, or in language unintelligible except to those having a key to its hidden meaning. As this question has heretofore been passed upon by this court contrary to the views we find it impossible to become divested of, and, as we think, contrary to the great weight of the well reasoned adjudications, both in this country and in England, we take it up with diffidence that finds no palliative in the fact that the decision heretofore was by a divided court. W. U. Tel. Co. vs. Hyer Bros., 22 Fla., 637, 1 South. Rep., 129. In that case the majority of the court, while approving the following well-established rule first formulated in reference to carriers of goods in the *cause celebre* of Hadley vs. Baxendale, 9 Exch., 341: "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be either such as may

34

fairly and substantially be considered as arising natu-
rally, *i. e.*, according to the usual course of things,
from such breach of contract itself, or such as may
reasonably be supposed to have been in the contempla-
tion of both parties at the time they made the contract,
as the probable result of the breach of it," hold that it
has no applicability to the contracts of telegraph com-
panies for the transmission of messages, and that such
companies may be justly considered and treated as
standing alone, a system unto itself. The reasoning
leading to this conclusion is as follows: "The common
carrier charges different rates of freight for different ar-
ticles according to their bulk and value and their re-
spective risks of transportation, and provides different
methods for the transportation of each. It is not
shown here that the defendant company had any scale
of prices which were higher or lower as the importance
of the despatch was great or small. It can not be said,
then, that for this reason the operator should be in-
formed of its importance, when it made no difference
in the charge of transmission. It is not shown that if
its importance had been disclosed to the operator that
he was required by the rules of the company to send
the message out of the order in which it came to the
office, with reference to other messages awaiting trans-
mission, that he was to use any extra degree of skill,
any different method or agency for sending it, from
the time, the skill used, the agencies employed, or the
compensation demanded, for sending an unimportant
dispatch, or that it would aid the operator in its trans-
mission. For what reason, then, could he demand in-
formation that was in no way whatever to affect his
manner of action or impose on him any additional ob-
ligation? It could only operate on him persuasively to
perform a duty for which he had been paid the price

he demanded, which in consideration thereof he had agreed to perform, and which the law in consideration of his promise and the reception of the consideration therefor had already enjoined on him." The answer to all this is, that the same argument is equally applicable as a reason why the rule in Hadley vs. Baxendale should not apply to carriers of goods for hire. The carrier of goods in contracting to carry and deliver deals with the tangible; when he contracts he has in his mind's eye *from the visible, tangible subject of his contract* what will be the probable damage resulting directly from a breach of it on his part, and so has the other party to the contract with the carrier—therefore, the damage likely to flow from a breach by the carrier can properly be said to enter *mutually* into the contemplation of *both parties* to the contract, and it is this *mutuality in the contemplation of both parties to the contract of the results* that will be likely to flow directly from its breach that really furnishes that equitable feature of the rule that the damages thus *mutually contemplated* are in fact the damages that the *law* will impose for the breach. Why? Because, in the eye of the law, the parties having *mutually contemplated* such damages in going into such contracts, those damages can alone be inferred as having *entered into their contract as a silent element thereof*. The rule in Hadley vs. Baxendale is applicable alone to breaches of *contract*, and formulates concisely the measure of damages for the breach of those *contracts* that do not within themselves in express terms fix the penalty to follow their breach. In other words, this rule does nothing more than to give expression to that *part of the contract* which in the eye of the law has been *mutually agreed upon between the parties*, but concerning which their contract itself is silent. This

essential and leading feature of the rule, we think, was wholly lost sight of in the discussion of the question in Hyer Bros. vs. W. U. Tel. Co., *supra.*, *i. e.*, that the damages provided for under the rule arise *ex contractu*, and that unless there is *mutuality* in all the essential elements that enter into or grow out of the contract the whole fabric becomes *unilateral* and abhorrent in the eyes of the law. The assertion, as a rule of law, that one party to a contract shall *alone have knowledge* that a breach of that contract will directly result in the loss of thousands of dollars, and, that upon such breach, he can recover of the other *party to the contract* all of such, to him, *unforeseen, unexpected, uncontemplated, non-consented-to* damages, seems to us to be a complete upheaval of all the old land-marks in reference to damages upon broken contracts, and the establishment of a *new rule* that is neither fair, just or equitable; and which, if it is to be applied to the broken contracts of telegraph companies, must also, according to every principle of consistency, be applied, under like conditions, to every violated contract where individuals are the contracting parties. The agument in Hyer Bros. vs. W. U. Tel. Co., *supra*, that it was not shown that the telegraph company would have charged more, or used more dispatch, or taken more care, or been aided in any way in the performance of its duty if it had been informed of the contents or purport of the message contracted to be sent in that case, is entirely foreign to the question. In arriving at the *rule of law* as to the damage that parties to contracts are *entitled to*, as a matter of *legal right*, upon breach thereof, a consideration of anything that might or might not *in fact* have prevented the wrongful breach, has nothing to do with the subject whatever. But we are to look to and

consider the *mutual rights* of the parties from the inception of the contractural relations between them down through the contract itself to the breach complained of. One of the primary *rights* that *each party* has who is about to enter into a contract with another, a breach of which may result in damage, is to be so situated that he may foresee what direct probable results will reasonably and in the usual course of events follow bad faith, neglect or other breach upon his part. Why? Not that it will or will not *in fact* deter him from being delinquent, but that he may, if he will, so act as to *guard against and avoid, for his own benefit,* the foreseen calamitous consequence, or, that he may, if he does not, be held to have *knowingly* and *willingly* subjected himself to the *contemplated* consequences of his wrong, that, from being foreseen and contemplated, the law will impute his consent thereto.

That the rule formulated in Hadley vs. Baxendale, *supra,* is the one properly applicable to the contracts of telegraph companies for the transmission of messages, has the support of the overwhelming weight of the decided cases, not only as to the numerical strength of the decisions concurring therein, but in the logical soundness of the reasoning upon which their conclusions rest, as will be seen from the following authorities: W. U. Tel. Co. vs. Hall, 124 U. S., 444; Sanders vs. Stuart, L. R. 1 C. P. Div., 326; Behm vs. W. U. Tel. Co., 8 Biss., 131; White vs. W. U. Tel. Co., 14 Fed. Rep., 710; Baldwin vs. U. S. Tel. Co., 45 N. Y., 744; W. U. Tel. Co. vs. Graham, 1 Col., 230; s. c. 9 Am. Rep., 136; First National Bank vs. Telegraph Co., 30 Ohio St., 555; s. c. 27 Am. Rep., 485; Candee vs. W. U. Tel. Co., 34 Wis., 471; s. c. 17 Am. Rep., 452; Daniel vs. W. U. Tel. Co., 61 Texas, 452, s. c. 48 Am. Rep., 305; Beaupre vs.

Pacific & Atlantic Tel. Co., 21 Minn., 155; True vs. Telegraph Co., 60 Maine, 9; Squire vs. W. U. Tel. Co., 98 Mass., 232; U. S. Tel. Co. vs. Wenger, 55 Pa. St., 262; Tyler, Ulman & Co. vs. W. U. Tel. Co., 60 Ill., 421; U. S. Tel. Co. vs. Gildersleeve, 29 Md., 232; W· U. Tel. Co. vs. Kirkpatrick, 76 Texas, 217; Cannon vs. Telegraph Co., 100 N. C., 300; Landsberger vs. Magnetic Tel. Co., 32 Barb., 530; Manville vs. W. U. Tel. Co., 37 Iowa, 214; W. U. Tel. Co. vs. Edsall, 63 Texas, 668; Hibbard vs. W. U. Tel. Co., 33 Wis., 558; Thompson vs. W. U. Tel. Co., 64 Wis., 531; Abeles vs. W. U. Tel. Co., 37 Mo. App., 554; W. U. Tel. Co. vs. Cornwell, 2 Col. App., 491; 3 Sutherland on Damages, 298; Wood's Mayne on Damages, 40; Thompson's Law of Electricity, secs. 311 to 316 inclusive, and Sections 346 and 358 to 375 inclusive. Opposed to this array of authorities are the following decisions by divided courts, with the exception of the Georgia and Mississippi cases: W. U. Tel. Co. vs. Hyer Bros., *supra*; Daugherty vs. Am. Union Tel. Co., 75 Ala., 168; s. c., 89 Ala., 191, 7 South. Rep., 660; W. U. Tel. Co. vs. Way, 83 Ala., 542, 4 South. Rep., 844; W. U. Tel. Co. vs. Fatman, 73 Ga., 285; Alexander vs. W. U. Tel. Co., 66 Miss., 161, 5 South. Rep., 397. The case of W. U. Tel. Co. vs. Reynolds, 77 Va., 173, is also cited as sustaining a contrary rule, but a careful reading of that case will disclose the fact that the conclusions reached are predicated upon a statutory provision in their code. In the case at bar the message that it is alleged the defendant company failed to send was in cipher and contained nothing that would indicate to the defendant's operator whether it contained a criticism upon the "Horse Fair" painting by the great artist Rosa Bonheur named in the message, or whether it related to a matter of dollars and cents. There was

no explanation made to the operator as to its meaning or importance, except that the plaintiff said that the word "gladfulness" in the message had a special meaning. What that special meaning was he did not disclose. Under these circumstances all that the plaintiff could rightfully recover for the defendant's failure to send or deliver the message would be nominal damages, or, at most, the sum paid by him as the price of its transmission. It was error, therefore, for the court to admit testimony as to the damage sustained by the plaintiff by the loss of sale of a cargo of timber consequent upon the failure to forward the message.

There is another feature presented in the proofs, aside from all that has been said upon the rule of damages in such cases, that would prevent the recovery had in this case. The plaintiff himself testifies that he received from his agent Dobell in Europe an *offer* for the cargo of timber. What that offer was is nowhere stated or shown. Then he says: "I decided to *make a final proposition,* which I did by taking the message to the telegraph office that was not sent, which message when translated *was an offer by me* of said cargo of timber for sale at 54 shillings per load." Then he says that he missed the sale of the cargo *at the terms offered by him in his message* in consequence of the defendant's failure to send it, and, consequently, had to sell on the market for the best price he could get, which was 52 shillings per load. There is not a word of proof in the record to show that *his offer* contained in the unsent message would ever have been accepted, or that he could ever at any time have sold the timber at the price at which he so offered it, or that it could ever have been sold at any greater price than the one he actually received for same, whether his message had been sent or not. Yet in the

face of this state of the proofs damages have been allowed to the plaintiff equal to the difference between a price at which he simply *offered* his timber for sale, and the price actually received by him for it, without a word of proof to show whether the higher price at which he *offered it for sale* could ever have been obtained for it or not.

The appellee contends that because of the decision in W. U. Tel. Co. vs. Hyer Bros., *supra*, the question of damages can not be considered, that, as to this case, it is *stare decisis.* This doctrine, as we understand it, is properly applicable to decisions furnishing rules of property, and those construing statutes, and to those passing upon the validity of contracts in which investments have or may have been made upon the faith of the adjudication as to their validity, in which cases former decisions upon the same questions will be adhered to, but we do not think this case fails within the rule.

In reversing the former ruling of the court in Hyer Bros., we do not interfere with any *vested right, acquired* upon the faith of that adjudication, but pass upon the rule of damages, as upon an abstract proposition, to follow the breach of such contracts. Of the erroneousness of the rule as laid down in that case, we are perfectly and clearly satisfied; and, in such case, in determining the propriety of overruling it as a solemn adjudication, we are to be governed largely by a consideration of the results that will likely flow from the enunciation and establishment of the one or the other of the two rules. If, in such case, we conclude that the affirmance of what we deem to be the erroneous rule in that case, will be productive of more far-reaching and harmful results than would follow the disaffirmance thereof, then it becomes our duty to over-

turn it. And such we think would be the result here. Besides being unilateral and wholly unfair, as we have before stated, we can not see why, if the protection of the rule in Hadley vs. Baxendale is to be withheld from contracts with telegraph companies, it should not also be denied in the daily recurring contractural controversies between individuals. To overturn the rule in controversies as between man and man would be such an uprooting of the old land-marks as to make it impracticable to surmise the harmful results that would follow. Entertaining these views, we do not think that the doctrine of *stare decisis* constrains us to adhere to the rule in Hyer Bros., but think that less harm will follow our return to the well-beaten and familiar track, that-furnishes a plain and easily comprehended rule for all contracting parties, be they corporate or individual.

The judgment appealed from is reversed, and a new trial ordered.

RANEY, C. J.:

A reconsideration of the question of the measure of damages involved here confirms the correctness of the views expressed in my dissenting opinion in W. U. Tel. Co. vs. Hyer Bros., 22 Fla., 649 *et seq.*, 1 South. Rep., 129, and I concur in the opinion of Judge Taylor, that the rule followed in the case mentioned is unfair and ought not to be perpetuated; and, without committing myself further upon the question of *stare decisis*, my conclusion is that more injury will result in the future from adhering to the rule of the Hyer case than will accrue to parties to past transactions from changing it, and that the judgment should be reversed. Cooley's

Con. Lim. (5th ed.), 65 and note 1; Wells on Stare Decisis, Section 624 *et seq.*; Chamberlain on Stare Decisis, 19.

MABRY, J.:

The question of liability to damage for a failure on the part of a telegraph company to send a cipher message is not a new one in this court. Over six years ago this question was deliberately settled here by the decision in the case of Western Union Telegraph Co. vs. Hyer Bros., 22 Fla., 632. It is proposed now to reverse this case and my view is that it should not be done. Every question in reference to cipher messages entering into the case now before us was fully discussed and maturely considered in the Hyer case, and this case has the support of decisions in Alabama, Mississippi, Georgia and Virginia. Under the decision in the Hyer case there was a remedy for damages for a failure on the part of a telegraph company to send a cipher message when it had for compensation agreed to do so. There is much merit in the rule that where the company holds itself out to the public as a transmitter of cipher messages for pay, it should not be allowed, after receiving the money and agreeing to send the message, to deny its liability for damages resulting from its own violation of duty, on the ground that the message was in cipher and its contents not known to the company when it agreed to send it. This court having planted itself in favor of this rule over six years ago I do not think we should now disturb it. I do not see how greater harm will result from adhering to the decision than overruling it.