Wilson, J.,
delivered the opinion of the court.
Plaintiff was a merchandise broker at Pueblo, Colorado. At that place, on the evening of July 19, 1894, he delivered to defendant for transmission by telegraph to California the following night message:
“ Pueblo, Colo., 7-19,1894.
“ Southern California Canning Co.,
“ Los Angeles, Qalif.:
“ Bragdon ready, Buy about Cliff cases. San Jose offers standard Cots Befit Pears, Peaches, Bivalve, Plums, Grapes, Bayou, Gallon Pie Blackberries, Calends, Cherries, Caliph, Peaches, Pears, etc., Bus. Guaranteed against decline Leading brands March first on all not shipped option March first to take the goods abider Extra discount Likes Rule Brand. Wire inside limit. All standards and seconds Gallon Table and Pies. Now, Mr. Welsh, let us take this order. Brag-don is square wont try to work you. Will be permanent Customer. Will forfeit Brokerage if necessary effect sale. Wire your ultimatum.
“N. C. Barwise.”
He alleges in his complaint that this meant, and would have been understood by the company to which it was addressed, to mean as follows:
“ The McCord-Bradgon Grocer Company is ready to buy about 5,000 cases. San Jose offers standard apricots 1.05, Pears, Peaches, 1.28, Plums, Grapes 1.00, Gallon Pie Blackberries 2.85, Cherries 2.95, Peaches, Pears, etc., 2.25. Guaranteed against decline, leading brands, March first. On all not shipped option March first to take the goods 1-|- extra discount. Likes Rule brand. Wire inside limit. All stand *330 ards and seconds. Gallon Table and Pies. Now, Mr. Welsh, let us take this order. Bragdon is square, won’t try to work you. Will be permanent customer. Will forfeit brokerage if necessary to effect sale. Wire your ultimatum.
“ N. C. Barwise.”
The message was not delivered on the 20th as it should have been, but was received and delivered on the 21st. B}^ reason of this delay, plaintiff claims that he failed to make a sale of merchandise from which he would have received a commission of $500, and for this damage brings suit. Judgment was in favor of plaintiff for $216, and from this defendant appeals.
As to the measure of damages, the court gave the following instruction to the jury:
“ 3. The court instructs the jury that should you find for the plaintiff, the measure of the damages is the loss which the plaintiff has suffered in commissions, if any, by reason of the nondelivery to the addressee by the defendant of the telegram; provided you find for the plaintiff, you find the conditions as hereinafter set forth in these instructions.”
The antecedent conditions referred to and required to be first found as a basis of a verdict in favor of plaintiff were in substance:
1. That the import of the telegram was sufficient to inform the telegraph company, through its agent, of the fact that commission or brokerage was involved.
2. That had the telegram been sent without delay and received by the Los Angeles company, it would have been understood by it as an order and would have been so accepted on the terms therein set forth.
3. That the failure to accept the order was solely due to the delay in the delivery of the message.
4. That had said telegram been accepted as an order the fruit company would have allowed to plaintiff commissions definite, certain and fixed.
This instruction did not correctly state the law applicable *331 to this case, and the giving of it was material error which compels a reversal.
Telegraph companies are not common carriers, and it is well settled by the great weight of authority that their obligations and liabilities are not to be measured by the- same rules. They cannot be treated as absolute insurers against mistakes in the transmission of messages nor delays in their prompt delivery, except in so far as they so create this relation by their own acts, so hold themselves out to the public, or make themselves by their own rules. They exercise however, a public employment analogous in many respects to that of common carriers, and are public agents, hence their liabilities and obligations are not founded solely upon express' contract, nor restricted within the limits of statutory requirements. Beyond these they may he under obligations which must be fixed by considerations arising from the nature of their business, the character and importance of particular transactions which arise in the conduct of their business, and the application to them of the principles of justice and public policy recognized alike by common sense and the common law. Smith v. Telegraph Co., 83 Ky. 104; Telegraph Co. v. Carew, 15 Mich. 525; Telegraph Co. v. Fontaine, 58 Ga. 434; Grinnell v. Telegraph Co., 113 Mass. 299; Baldwin v. Telegraph Co., 45 N. Y. 750; Field on Damages, § 411; Gray, Communication by Telegraph, § 8, et seq.
In actions against them for damages on account of failure to comply with their contracts with reference to the transmission and delivery of messages, the rules by which the damages are ascertained, fixed and measured are controlled to some extent by the circumstances of the particular case to which they are sought to be applied. Where however consequential damages are sought to be recovered, one rule, concurred in by all authorities, is applicable to every case. This rule is that the damages claimed must be such as may fairly and reasonably be considered as arising naturally, i. e. according to the usual course of things, from the breach of contract complained of, or such as may be reasonably supposed to *332 have been in the contemplation of the parties at the time of making the contract as a probable result of the breach of it. They must be certain both in their nature and in respect to the cause from which they proceed, and must not be speculative or contingent. They may not be the remote, but must be the proximate, consequence of the breach. It is not sufficient that they may be a mere possible result traceable to the cause assigned, but they must be the natural and proximate consequence of the act or failure. It is not always necessary that they should be the immediate result, but they must be such as according to the usual and natural course of events can be considered as fairly and substantially arising from it, otherwise they are not its natural incidents. Ordinarily, if there still remains some intervening contingency which may or may not be reasonably expected to happen in the natural course of things, and which must happen before the act could have been done or omitted from which the damages are claimed to have resulted, then such damages are not the direct and natural result of the breach of contract. This is substantially the rule laid down in Hadley v. Baxendale, 9 Exch. 254, as construed, followed and approved by the courts and all law writers with practical uniformity. Telegraph Co. v. Hall, 124 U. S. 445; Primrose v. Telegraph Co., 154 U. S. 1; Smith v. Telegraph Co., supra; Griffin v. Colver, 16 N. Y. 489; Candee v. Telegraph Co., 34 Wis. 471; Telegraph Co. v. Wilson, 32 Fla. 527; 2 Greenleaf on Evidence, page 210; Field on Damages, § 414. The rule is in fact the same, as said by Judge Dixon in Candee v. Telegraph Co., supra, as obtains in actions upon contracts in general. We are relieved from any necessity or obligation to make extended citations of authorities in support of it, viewed either with reference to contracts in general, or to those of telegraph companies, because both of the appellate courts in this state have affirmed the rule, and have expressly held that it applies to the contracts and business of such companies. Telegraph Co. v. Graham, 1 Colo. 231; Telegraph Co. v. Cornwell. 2 Colo. *333 App. 492. We need add nothing to the elaborate and able opinion handed down in each of those cases.
Applying this rule to the case at bar as presented by the evidence adduced on behalf of the plaintiff alone, it cannot be said that the damages claimed were the proximate and natural result of the default of defendant in the prompt delivery of the dispatch, conceding that this was negligent and without sufficient excuse. According to the testimony, plaintiff had no offer to buy from the McCord-Bragdon Company, and had no authority from the canning company to sell. The true tenor and import of the dispatch accorded with the then existing state of facts and was to the effect only that the former company desired to purchase about 5,000 cases of fruit of a varied assortment; that another fruit company had quoted to them certain prices; that plaintiff wished to know the lowest prices of the canning company on the same class of goods, and in the event these and the terms were satisfactory he might effect the sale; and that he, plaintiff, would if necessary to bring about a sale forfeit all claim to brokerage fees. It was not like an order to sell or to buy at a given price or at the then market price. It was not even a notice that he could sell if a certain price was quoted. It was simply a request for a quotation of prices, coupled with a statement of those quoted by a rival concern, and a suggestion that he could sell if they could give better prices and could fill the order. It does not naturally follow that, if the message had been delivered during the day succeeding the night when it was sent, the sale would have been consummated. There were several intervening steps and contingencies. The canning company might not have been able to supply the stock required, and in fact it was testified that during the one day that the dispatch was delayed they had closed out all of certain classes of the goods desired, and that this was the reason they could not on the next day, when the telegram was delivered, agree to fill the entire order if it should be given. It does not appear too at what time of the previous day this stock had been closed out. It might have been at *334 an hour previous to the time when in the exercise of due diligence the message could have been delivered. Again, the canning company might have been unable or unwilling to meet the prices of their rival. They were not the agents of plaintiff, and he could not have compelled them to meet the competition. It is true the manager of the canning company testifies that if he had received the message on the morning of July 20, “ I think there is no doubt that we could and would have contracted to fill the entire order.” The plaintiff testified that no specific order had been given, simply a desire or intention to purchase had been expressed by the McCord-Bragdon Company. They might in the mean time have concluded not to buy even if better prices than those quoted by the rival concern had been offered, or they might have purchased elsewhere. The fact that they did not give a specific order coupled with the fact that they were receiving or soliciting quotations, shows that they were, as is customary with merchants, looking around to ascertain where they could secure the best prices and terms. Before a sale could have been effected, their consent would have been necessary. This was another contingency, and one too, over which the plaintiff had no control, which intervened between the delivery of the message and a consummated contract of sale. If the message had been delivered on the morning of the 20th, and the canning company had wired to plaintiff their willingness to fill the entire order at lower prices and on better terms than those offered by the San Jose company, plaintiff could have done nothing more than make an offer to sell, and this might have been declined.
For these reasons, we are clearly of opinion that the damages claimed by plaintiff were not the proximate and natural result of the delay in the delivery of the message. The earning by him of a commission was dependent upon too many contingencies other than the prompt delivery of the telegram.
Neither can it be successfully maintained that the damages alleged can be fairly and reasonably supposed to have been in the contemplation of plaintiff and defendant, at the time the *335 contract for the transmission of the message was made, as the probable resnlt of the breach of it. It is admitted that at the time of its delivery for transmission plaintiff made no statement as to the nature of its contents or its importance, or that loss might be incurred from a failure to promptly transmit and deliver it. Before defendant could be held therefore to have come within this rule for the assessment of damages, it must appear that it had such knowledge or that it could be reasonably supposed to have obtained it from the language of the message itself. In our opinion, neither of these conditions existed. The operator who received the telegram testified that she had no knowledge of its import, and it is apparent that the small portion of it which was intelligible to her, could not reasonably be held sufficient to impart such knowledge. It is true that she knew plaintiff was engaged in business as a merchandise broker, and this together with a few intelligible words in the message might reasonably be supposed to have been sufficient to indicate to her that the telegram was concerning business. But this was not enough. Not every telegraphic dispatch sent by a business man in reference to business is of such a character that loss or special damage results from delay in its delivery or even from nondelivery. Whatever knowledge it may be conceded those facts should have imparted, it is not sufficient to support a reasonable presumption that at the time of the making of the contract for transmission, the loss or damages which plaintiff claims to have been the result of twenty-four hours’ delay in delivery, were in the contemplation of the parties as a probable result of such breach of contract. As a matter of fact, the immediate, direct and proximate cause of the failure to make a sale, admitting that prices and terms satisfactory to the McCord-Bragdon Company had been offered on July 21, and that they had been still willing to buy, was the inability of the canning company to have filled the entire order, if made, as was expected by plaintiff when he sent the message. Can it be said that when the contract was made the parties had in view the happening of any such contingency? If *336 plaintiff himself had contemplated or feared this, it is reasonable to suppose that he would have suggested it to the operator, or have at least requested diligence in the transmission aud delivery of the message.
Moreover, the claim of plaintiff for damages on account of loss of commission stands upon reason and principle on the same footing as a claim for damages on account of loss of anticipated profits. The rule in reference to a recovery of damages on this ground is still more stringent in requiring that it shall first clearly appear that such damages are definite and certain both in their nature and in respect to the cause from which they proceed; and that they must flow directly and naturally from the breach of contract. Telegraph Co. v. Hall, supra; Telegraph Co. v. Graham, supra. In the latter case, our supreme court says, “A rule of damages which should embrace within its scope all the consequences which might be shown to have resulted from a failure or omission to perform a stipulated duty or service, would be a serious hindrance to the operations of commerce and to the transaction of the common business of life.”
For these reasons we hold that upon the state of facts as shown by the evidence, the instruction of the court as to the measure of damages did not correctly state the law applicable to the case, and that the giving of it was material error for which the judgment must be reversed. If entitled to recover at all, the judgment in his favor could only have been for the amount of the tolls paid by him to defendant for the transmission and delivery of the message.
There are a number of other assignments of error, involving important legal questions, but we do not feel it necessary to consider them. The questions upon which we have passed are the most material, are largely decisive of the others, and necessitate a judgment of reversal. Counsel for appellant has presented an able and thorough brief, but those for appellee have not seen fit to even mate an appearance in this court, and have filed no brief in support of the judgment which they obtained. This is not fair to the court, more *337 especially where so many and such important principles are involved as in this case. With an overcrowded docket, the rights of other litigants who are diligent and who have equally important interests at stake, are entitled to and must receive consideration. It is not unreasonable for appellate courts to expect counsel on both sides to render some assistance to the court by some argument where numerous and important, principles are involved, and by a reference to the .authorities-in support of their position, if there be any. If they fail in this, they must not complain if the court should fail to discharge to their complete satisfaction the duty which they have unjustly imposed upon it of acting as their attorney, and should not determine some points which may possibly again arise in a new trial, if one be had.
The judgment will be reversed and the cause remanded for further proceedings in conformity with the views herein expressed.

Reversed.