Filed Jan. 6, 1892.

---

376.

## LANE ET AL. *v.* THE UNION NATIONAL BANK OF MASSILLON, OHIO.

PROMISSORY NOTE.—*Place of Payment.—Abbreviation.—Evidence of Custom.*— Extrinsic evidence is admissible to show that the words, "First Nat. Lafayette, Ind.," in a note, had a definite and settled meaning by usage or custom among business men in the neighborhood where the notes were payable, and meant First National Bank of Lafayette, Indiana. Proof that such usage or custom was co-extensive with the State is not required.

From the Tippecanoe Circuit Court.

*C. E. Lake,* for appellants.

*F. W. Chase,* for appellee.

ROBINSON, C. J.—The appellee commenced this action against the appellants. The complaint was in two paragraphs, and was founded upon two promissory notes executed to Russell & Co., Massillon, Ohio, payable at First Nat., Lafayette, Indiana. The notes were assigned by Russell & Co. to the appellee before maturity. It was alleged in each paragraph of the complaint that the appellee purchased said notes before maturity, and paid full value therefor, without notice of any defect therein or defence thereto;

that appellee was the owner and holder of the same; that by the mistake and inadvertence of the scrivener, who wrote said notes, the word "bank" was omitted from said notes in that portion thereof which provided where the same should be payable; that at the time said notes were made to said Russell & Co. said appellants understood and agreed that said notes should. be due and payable at the First National Bank of Lafayette, Indiana; that the words, "First Nat., Lafayette, Ind.," were intended to mean, and did mean, First National Bank of Lafayette, Indiana, and a bank in the State of Indiana; that said First National Bank of Lafayette, Indiana, was a bank in the city of Lafayette, Indiana, and the only bank in said State of that name, etc.

The appellants answered in two paragraphs. The first paragraph was in the nature of a cross-complaint, alleging that the appellant Barnard was only surety on the notes sued on; that there was no understanding and agreement between the appellants and the payee of said notes as averred in the complaint that said notes were to be made payable at the First National Bank of Lafayette, Indiana; that the words payable at "First Nat., Lafayette, Ind.," were not intended to mean payable at the First National Bank of Lafayette, Indiana, and that said words did not mean that said notes were payable at the First National Bank of Lafayette, Indiana; that the notes sued on, with other notes, were executed to Russell & Co. for a threshing machine purchased of them by the appellant Lane under a written contract of warranty. A breach of said warranty was properly alleged with all facts necessary to constitute the relief sought by the appellants under this answer or cross-complaint. Appellants also plead the general denial.

A reply was filed by the appellee. The cause was submitted to a jury. The jury returned a general verdict for the appellee, with answers to special interrogatories propounded by both parties by leave of the court.

Appellants filed a motion for a new trial, which was over-

ruled, and exception taken, and judgment was rendered on the verdict.

Under the alleged error of the court in overruling the motion for a new trial, appellants first press for our consideration, and insist that the court erred in permitting Hiram W. Moore, a witness on behalf of the appellee, to answer a question propounded by the court as to whether there were any abbreviations known and generally used among commercial and business men in Lafayette and elsewhere in reference to the names of National Banks by any other words than their full, proper names, and in permitting said witness to answer the following questions:

" What do the words in that note mean, if anything, in reference to the place of payment?" and, also, " What do they mean, if you know," referring to the words, " First Nat. Lafayette, Ind.," contained in the note sued on in the second paragraph of complaint?

And in permitting John C. Brockenborough, a witness on behalf of the appellee, to answer the following questions:

" What is the meaning of the words, ' First Nat. Lafayette, Ind.,' if you know?" and " I will now hand you the second note described in the second paragraph of complaint, a note for $165, and ask you to state to the jury what is the meaning of that note, which is ' First Nat. Lafayette, Ind?' "

And also in permitting B. I. Johnson, a witness on behalf of appellee, to answer the following question:

" I will ask you to state what is the meaning of the words, ' First Nat. Lafayette, Ind.,' in the note handed to you for examination; and in permitting said witness to testify what the words, ' First Nat. Lafayette, Ind.,' meant in reference to the $165 sued on in the second paragraph of the complaint?"

Before determining the question involved in the cause in the motion for a new trial under consideration, it is proper to say that it appeared from the evidence of these witnesses that

each of them had large experience in the business of banking, the manner in which notes were executed payable in the banks at Lafayette and elsewhere in this State, and were acquainted with the usages and custom that had existed at Lafayette and elsewhere in this State, and were acquainted with the abbreviations known and generally understood among commercial and business men in Lafayette and elsewhere in reference to the name of National Banks being known by other words than their full, proper names, and knew that the First National Bank of Lafayette, Indiana, was the only bank of that name in this State, and that by reason of the possession of such knowledge, and of their acquaintance with the usages and custom of commercial and business men in Lafayette and elsewhere in this State as to abbreviating National Banks by other words than their proper names, that the words, " First Nat. Lafayette, Ind.," in said two notes meant " First National Bank of Lafayette, Indiana," and made said notes payable at the First National Bank of Lafayette, Indiana.

The importance of the question as to whether said notes were made payable in said bank fully appears by the record. If they were so payable, the appellee being an innocent holder, having purchased before maturity, in good faith and for value, deprived the appellants of their defence, and entitled appellee to judgment for the amount due on the notes; but if the notes were non-negotiable, it would appear from the answer of the jury to the interrogatories propounded by the appellants that the breach of warranty alleged in the machine had been sustained, and the verdict would have presumably been for the appellants.

The only argument of the appellants as to the alleged error of the court in its rulings upon the evidence in question is based on the assumption that the appellee in order to prove the meaning of the words, " First Nat., Lafayette, Ind.," in the notes in suit, was required to show that these words by a custom co-extensive with the State were in-

tended to mean and did mean " First National Bank of La-
fayette, Indiana."

The question here presented is whether the notes sued on
and executed as before seen could be shown by extrinsic
evidence, by reason of the abbreviation therein contained,
and the omission of the word bank by a known and general
usage or custom among commercial and business men in La-
fayette and elsewhere, to mean that such abbreviation and
omission meant First National Bank of Lafayette, Indiana.
In the decided cases in this State upon the question under
consideration there seems to be some confusion relating to
the rule of law as to usage and custom, and in some in-
stances no distinction is made.   In the more recent case of
*Morningstar* v. *Cunningham,* 110 Ind. 328, this question re-
ceived able consideration, and this case with the authorities
cited clearly establish the following principles relating to
usage and custom :

" It is not essential that such a usage should be so shown
to be ancient ' that the memory of man runneth not to the
contrary,' nor that it should contain all the other elements
of a common law custom, as defined in the books.

" The distinction between a usage of trade and a common
law custom, has not always been observed.  A custom is some-
thing which has, by its universality and antiquity, acquired
the force and effect of law, in a particular place or country, in
respect to the subject-matter to which it relates, and is ordi-
narily taken notice of without proof.   Thus, when a payee
endorses his name on the back of a promissory note, the law,
by force of a prevailing and universal custom, imports a well-
recognized contract into the transaction.

" Where a usage in a particular trade or business is known,
uniform, reasonable, and not contrary to law, or opposed to
public policy, evidence of such usage may be considered in
ascertaining the otherwise uncertain meaning of a contract,
unless the proof of such usage contradicts the express terms
of the agreement.   This is so even though the usage be that

of a particular person, provided it be known to the parties concerned, or provided it has been so long continued, or has become so generally known and notorious in the place or neighborhood, as to justify the presumption that it must have been known to the parties.

"Parties who are engaged in a particular trade or business, or persons accustomed to deal with those engaged in a particular business, may be presumed to have knowledge of the uniform course of such business. Its usages may, therefore, in the absence of an agreement to the contrary, reasonably be supposed to have entered into and formed part of their contracts and understandings in relation to such business as ordinary incidents thereto."

It, therefore, seems clear that the court did not err in permitting the appellee to prove by competent testimony what was intended by the abbreviation in the notes sued on, and that the abbreviation had a definite and settled meaning in the business world in the neighborhood where the notes were payable, and that proof of usage or custom co-extensive with the State was not required.

It is also claimed by the appellants that the court erred in giving one of its instructions to the jury, but no specific objection is pointed out to this instruction, and besides, under the conclusion we have reached, the instruction was correct.

The judgment is affirmed, at appellants' costs.

Filed Jan. 9, 1892.