THE WESTERN UNION TELEGRAPH COMPANY, *Plaintiff in Error,* v. JOHN A. MERRITT, *et al., Defendants in Error.*

1. The rule in this State as to the measure of damages in actions against telegraph companies for negligence in the transmission or delivery of messages is that formulated in Hadley v. Baxendale, 9 Exch. 341: "Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be either such as may fairly and substantially be considered as arising naturally, *i. e.* according to the usual course of things from such breach of contract itself. or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it," This rule is applied here whether the particular action is *ex contractu* or *ex delicto.*

2. Where the message as delivered for transmission is in cipher and unintelligible except to the sender and addressee and no explanation is made to the operator as to its import and importance, the telegraph company is liable for transmitting it incorrectly in nominal damages only, or, at most, the sum paid for its transmission and delivery.

3. Where the message affords the only evidence of its import and importance and the company is not otherwise advised thereof, although it may be couched in unusual, abbreviated or technical language, yet, if it be sufficiently plain to indicate its nature and importance, that is, that it relates to a business transaction of importance and that a pecuniary loss will probably result unless it is promptly and correctly transmitted, recovery will not be limited to nominal damages.

4. It is not essential that the message disclose all the details of the transaction to which it relates, nor the particular business intended. The rule in Hadley v. Baxendale does not require that the parties *must* have contemplated the actual damages which are to be allowed, but such as may reasonably be *supposed* to have been contemplated. It is not essential that the particular loss or injury sustained was contemplated, but the company is liable if the loss sustained should have been contemplated as a probable and proximate result of its negligence.

5. When the message does not contain words sufficiently plain to indicate its nature and importance, but the company acquires this knowledge from extrinsic facts at the time the contract of sending is made, it will be liable for a failure to send the message accurately and promptly, just the same as if the message showed this fact on its face.

6. In determining whether the telegraph company had information of the importance of the message, or the necessity for its prompt and correct transmission, the court and the jury may consider the surrounding circumstances, particularly the fact that the operator knew or ought to have known of the general nature of the message from other messages handled by him relating to the same transaction.

7. Where there is doubt as to whether the words contained in the message were sufficient to indicate its importance, whether this is true with respect of the operator, or whether the latter was made more certain of its nature and importance by extrinsic facts, are questions for the jury.

8. The message "close," read in the light of the evidence furnished by the message to which it was an answer, "Offer 650 Tampa Nipe Bay, answer quick," clearly showed to the company's operator that it related to a business transaction of importance and that a pecuniry loss would probably result, unless it was promptly and correctly transmitted. (Taylor and Hocker, J J., dissenting).

9. Where a telegram contains abbreviated expressions and figure intelligible to the parties themselves and to those of a particu lar business in which the parties were engaged, but were un intelligible to a certain extent to persons not familiar with such business, parol evidence is admissible to show that they have a recognized and generally understood meaning in the trade or business to which the subject of the telegram relates. Such evidence merely translates the writing, for the benefit of the jury, from the language of the trade into the language of people generally.

10. In an action against a telegraph company for negligence in the transmission of a message it is not error for the court to refuse to strike certain parts of the declaration which are explanatory of the meaning of the message so as to declare the cause of action.

11. In an action against a telegraph company for negligence in the transmission of a message, an allegation in the declaration that the offered charter would have been closed and the voyage would have been performed had the telegram been transmitted to the sendee in the same language as it was delivered to the company is proper in order to show the proximate cause of the injury.

12. In an action against a telegraph company for negligence in the transmission of a message whereby the sendee of the message who was the master of a vessel declined an offer to charter the vessel because the message was so negligently altered in its transmission that the master understood by the message as delivered to him that he was not authorized to close the charter offered to him, it was not incumbent on the master of the vessel to take care to ascertain the correctness of the message received by him.

13. When no objection is made to the introduction of testimony on the trial of a cause, such testimony is considered as received by consent, and when such testimony is not irrelevant or immaterial the court errs in withdrawing such evidence from the consideration of the jury by an instruction to that effect.

14. A requested instruction leaving out of consideration some of the testimony pertinent to such instruction is properly refused, and it was not error for the court to correct this defect by an addition thereto.

15. A demurrer does not lie to a bill of particulars. A demurrer does not reach the question of damages if the declaration shows a valid claim to any damages whatever.

16. A motion for compulsory amendment of a declaration should state that the declaration was so framed as to prejudice, embarrass or delay a fair trial of the case.

This case was decided by the Court En Banc.

Writ of Error to the Circuit Court for Escambia County.

*Statement.*

The defendants in error, hereinafter called the plaintiffs, on the 4th of February, 1907, filed in the circuit court of Escambia county, the following declaration, with a statement of damages, against the plaintiff in error, hereinafter called the defendant:

"In Escambia County Circuit Court,
State of Florida.

John A. Merritt, R. H. Turner, Jr., L. H. Green, Rix M. Robinson, Bryan Dunwody, Adrian Dunwody, S. A. Dunwody, I. H. Aiken, John Christie, Thomas Johnson, Arthur Johnson, C. E. Mason, William H. Swan, John D. Eastman, Angela M. Eastman,

vs.

Western Union Telegraph Company.

The plaintiffs sue the defendant because:

1. Prior to the 24th day of December, 1905, the defendant was, and has been ever since, operating an electric telegraph line between Pensacola, Florida, and Cardenas, Cuba, over which it transmitted for hire, for the public, telegraphic messages; that on the said 24th day of December, 1905, the plaintiffs were, and still are, the owners of and operating the schooner 'Doris;' that the said schooner was for hire to such persons as should, from time to time, desire to charter her, and was, on said day, at Cardenas, Cuba, unchartered; that J. D. Eastman who was then and there the master of said vessel and in command of her, on said day received an offer from a person who desired to charter the said vessel for $6.50 per thousand feet of lumber which could be carried as a cargo by said vessel from Tampa to Nipe Bay, and, therefore, he telegraphed to John A. Merritt at Pensacola, Florida, one of the plaintiffs, and acting for the plaintiffs, as follows: 'Offer 650 Tampa Nipe Bay. Answer quick;' that the said telegram was delivered to

30

the said Merritt on December 25th, 1905; that the said Eastman intended that the said Merritt should understand and the said Merritt did understand the said message to mean that the said Eastman had received an offer for the charter of the said vessel from Tampa to Nipe Bay at the rate of six dollars and fifty cents per thousand feet of lumber which could be carried as a cargo by the said vessel from the said point to the said point; and that he desired authority from the said Merritt to accept the said offer; that so understanding the said Merritt immediately, to-wit: on December 25, 1905, delivered to the defendant for sending by it, for hire, to the said Eastman, at Cardenas, (and paid to it .the sum demanded by it for such sending) the following message, to-wit: 'Close', by which the said Merritt intended that that said Eastman should understand, and had the said message been transmitted and delivered to the said Eastman in the same language and terms as it was delivered to the defendant, the said Eastman would have understood that he, the said Eastman, was to accept the said offer, and he would have accepted the same and the said offered charter would have been closed and the said voyage would have been performed, and the said offered charter hire would have been received by plaintiffs; and the defendant received from the said Merritt the said telegram and undertook to deliver it as received to the said Eastman, but it failed to transmit and deliver to the said Eastman the said message as delivered to it by the said Merritt, but delivered to the said Eastman a telegram purporting to be from the said Merritt to him, the said Eastman, reading as follows, to-wit: 'closed;' by which the said Eastman understood and had a right to understand that a charter with the said vessel had already been closed before the receipt by the said Merritt of the said first mentioned telegram from the said Eastman, and that he, the said Eastman, was not authorized

to close the charter offered to him as herein above set forth; that thereupon the said Eastman declined the said offer and waited for further instructions from the said Merritt and the said Merritt, believing that the said charter had been closed, did not give any further instructions and no further efforts were made to obtain a charter for said vessel until after December 30, 1905, when the said Merritt discovered the said error in said telegram, as delivered to the said Eastman; that in spite of the most diligent efforts on the part of the agents of the said vessel they were unable to obtain a charter for her for a long time thereafter and then only for a charter hire much less than that which had been offered as aforesaid and for a voyage which required a longer passage from Cardenas to enter upon and a longer time to perform, and involving larger expenditures by the said vessel; that the said losses and differences of freight moneys as aforesaid, time lost while endeavoring to effect a new charter, additional expenditures and loss of time while entering upon and performing said new charter, and other losses and expenditures incident to the said wrongful transmission of the said telegram by the defendant aggregate the sum of twelve hundred and thirty-one and 97-100 ($1,231.97) dollars, which sum has been demanded by plaintiffs of defendant, but the defendant has never paid the same or any part thereof. To the damage of the plaintiff of sixteen hundred ($1,600.00) dollars, whereupon they sue.

Blount & Blount, Attys. for plaintiffs.

*Statement of Damages.*

The Western Union Telegraph Company,

To American Schooner 'Doris,' Dr.

Account of cable being sent incorrectly, thereby causing the following loss, based on the vessel's average cargo of 325,000 feet.

W. U. T. Co. v. Merritt.—Statement of Case.

By freight Tampa to Nipe Bay, 325,000 at
  $6.50 .......................... $2,112.50
By freight Mobile to Manzanillo, 325,000 at
  $5.75 .............................. 1,868.75

Difference in freight between Nipe Bay and
  Manzanillo ......................... $   243.75
To port charges between Tampa and Mobile    79.50
To port charges between Nipe Bay and
  Manzanillo ........................  183.60
Difference in passage Cardenas to Tampa,
  and Mobile five days at $31.00....... 155.00
Difference in passage between Tampa and
  Nipe Bay and Mobile to Manzanillo
  eight days at $31.00................  248.00
Detention at Cardenas awaiting orders and
  trying to secure new business ten days
  at $31.00 ......................... 310.00
Cables and telegrams sent relative to the
  matter .......................... 12.12

$1,231.97"

On the 28th of March, 1907, the plaintiffs by leave of court filed amendments to the foregoing count of the declaration and a second count to the declaration, as follows:

"Now come the plaintiffs and, by leave of court, first obtained, amend their declaration in this cause as follows: On the second line from the bottom of page one (1), after the word 'was', insert the words 'transmitted and,' on the last line of said first page, after the figures '1905,' insert the words 'by defendant.' On line 15 of the third page, after the word 'expenditures,' insert the words 'port charges,' and on line seventeen of the same page, after the words 'losses' insert the words 'port charges.'

And by adding a second count to said declaration, as follows:

2. That prior to the 24th day of December, 1905, the defendant was, and has been ever since, operating an electric telegraph line between Pensacola, Florida, and Cardenas, Cuba, over which it transmitted, for hire, for the public, telegraphic messages; that on the said 24th day of December, 1905, the plaintiffs were and still are the owners of and operating the schooner 'Doris;' that the said schooner was for hire to such persons as should from time to time desire to charter her and was, on said day, at Cardenas, Cuba, that said J. D. Eastman who was then and there the master of said vessel and in command of her, on said day, received an offer from a person who was able and who desired to charter the said vessel for $6.50 per thousand feet of lumber which could be carried as a cargo by said vessel from Tampa to Nipe Bay, and, therefore, he telegraphed to John A. Merritt, at Pensacola, Florida, one of the plaintiffs, who was then and there acting for the plaintiffs, as follows: 'Offer 650 Tampa Nipe Bay. Answer quickly;' that the said telegram was transmitted and delivered to the said Merrit on December 25, 1905, by defendant; that the said Eastman intended that the said Merritt should understand and the said Merritt did understand the said message to mean that the said Eastman had received an offer for the charter of said vessel from Tampa to Nipe Bay, at the rate of $6.50 per thousand feet of lumber which could be carried as a cargo by the said vessel from the said point to the said point, and that he desired authority from the said Merritt to accept the said offer; that so understanding, the said Merritt immediately, to-wit: on December 25th, 1905, delivered to the defendant, for sending by it, for hire to the said Eastman, at Cardenas, (and paid to it the sum demanded by it for such sending) the following message to-wit: 'Close,' by which

the said Merritt intended that the said Eastman should
understand, and, had the said message been transmitted
and delivered to the said Eastman in the same language
and terms as it was delivered to the defendant, the said
Eastman would have understood that he, the said East-
man, was to accept the said offer, and he would have
accepted the same and the said offered charter would
have been closed and the said voyage would have been per-
formed and the said offered charter hire would have been
received by plaintiffs; that the said defendant received
from the said Merritt the said telegram and undertook
to deliver it, as received, to the said Eastman, but that
it carelessly and negligently failed to transmit and de-
liver to the said Eastman the said message, as delivered
to it by the said Merritt, but negligently and carelessly
changed and altered the same so as to read as before
stated, and negligently and carelessly delivered to the
said Eastman the said altered telegram, purporting to
be from the said Merritt, to him, the said Eastman, read-
ing as follows, to-wit: 'Closed,' by which the said East-
man understood and had a right to understand that a
charter with the said vessel had already been closed be-
fore the receipt by the said Merritt of the said first men-
tioned telegram from the said Eastman, and that he, the
said Eastman, was not authorized to close the charter
offered him, as hereinbefore set forth; that thereupon
the said Eastman declined said offer and waited for fur-
ther instructions from the said Merritt and the said Mer-
ritt, believing that the said charter had been closed, did
not give any further instructions and no further efforts
were made to obtain a charter for said vessel until after
December 30th, 1905, when the said Merritt discovered
the said error in said telegram as delivered to the said
Eastman; that in spite of the most diligent efforts on the
part of the agent of said vessel, they were unable to ob-
tain a charter for her for a long time thereafter, and then

only for a charter hire much less than that which had been offered as aforesaid and for a voyage which required a longer passage from Cardenas to enter upon and a longer time to perform, involving larger expenditures by the said vessel; that the losses and difference of freight money, as aforesaid, time lost while endeavoring to effect a new charter, additional expenditures, port charges and loss of time while entering upon and performing said new charter, and other losses, port charges and expenditures incident to the said wrongful transmission of the said telegram by the defendant aggregate the sum of twelve hundred and thirty-one and 97-100 ($1,231.97) dollars, which sum has been demanded by the plaintiffs of the defendant, but the defendant has never paid the same, or any part thereof."

The defendant company filed the following motion to strike certain parts of the amended declaration: "Now comes the defendant by John E. Hartridge and Son, its attorneys, and moves the court to strike from the declaration the following words beginning on the first page of the declaration, after the date December 25th, and reading as follows: 'That the said Eastman intended that the said Merritt should understand and that the said Merritt did understand the said message to mean that the said Eastman had received an offer for the charter of the said vessel from Tampa to Nipe Bay at the rate of six dollars and fifty cents per thousand feet of lumber which could be carried as a cargo by the said vessel from the said point to the said point; and that he desired authority from the said Merritt to accept the said offer; that so understanding.'

And the defendant further moves the court to strike from the declaration that part of it beginning on page 2 after the words 'close' and reading as follows: 'by which the said Merritt intended that the said Eastman should understand and had the said message been trans-

mitted and delivered to the said Eastman in the same language and terms as it was delivered to the defendant, the said Eastman would have understood that he, the said Eastman, was to accept the said offer, and he would have accepted the same, and the said offered charter would have been closed and the said voyage would have been performed, and the said offered charter hire would have been received by plaintiffs.'

And the defendant further moves the court to strike from the declaration that part of it beginning on page 2 after the word 'closed' and reading as follows: 'By which the said Eastman understood and had a right to understand that a charter with the said vessel had already been closed before the receipt by the said Merritt of the said first mentioned telegram from the said Eastman, and that he, the said Eastman, was not authorized to close the charter offered to him as herein above set forth.'

And for grounds of said motion defendant assigns the following:

1. Parts of the declaration quoted above are entirely speculative.

2. The telegrams of which the above quotations are explanatory, speak for themselves, and are the best evidence of the meaning conveyed by them.

3rd. The telegrams of which the above quotations are explanatory are the best evidence of the meaning by them and this meaning can neither be enlarged or narrowed by allegations or deductions."

The defendant demurred to the declaration upon the following grounds:

"1. That the declaration does not set forth sufficient facts to create a liability against the defendant.

2. The declaration does not state the carrying capacity of the schooner Doris in thousand feet.

3. The declaration does not allege that the pro-

posed shipment from Tampa was as much as three hundred and twenty-five thousand feet.

4. The declaration does not show or state the port charges at Nipe Bay, Manzanillo, Tampa and Mobile.

5. The declaration does not state the time or duration of a voyage between Cardenas and Tampa, Cardenas and Mobile, and between Tampa and Nipe Bay and Mobile to Manzanillo.

6. The declaration does not allege or state any basis for the claim that the loss of one day by the ship would be or was of the value of thirty-one dollars.

7. The damages claimed are too remote and speculative.

8. The declaration shows that the captain did not take any care to ascertain the correctness or incorrectness of the message received in answer to his cablegram.

9. The declaration does not show that the person alleged to have made the offer of six dollars and fifty cents per thousand feet for the vessel from Tampa to Nipe Bay, was ever in a position to carry out or perform the alleged proposed contract.

10. The declaration does not show that the person alleged to have made the offer of six dollars and fifty cents per thousand feet for the vessel from Tampa to Nipe Bay, ever refused to make and carry out said contract or after the time the captain of the schooner ascertained that the mistake had been made in the transmission of the message to him from Tampa, as alleged in the declaration.

11. The declaration shows that the mutual performance or non-performance of the alleged proposed contract and the profits contemplated therefrom by the plaintiffs, were entirely speculative, remote and unsure of performance or attainment.

12. The damages claimed were not in the contem-

plation of the parties at the time of the making of said contract which is the basis of this suit.

13.   The declaration does not show that the damages claimed were in the contemplation of the parties at the time of the making of said alleged contract which is the basis of this suit.

. 14.   The declaration does not allege that the mistake said to have been made in the telegram as delivered to the captain of the schooner, was caused by the negligence of the defendant."

The defendant filed the following motion for compulsory amendment of the declaration: "Now comes the defendant by John E. Hartridge and Son, its attorneys and moves the court under Section 1433 of the General Statutes to direct and order the plaintiffs in this case to amend and reform their declaration herein, so that the only damage which shall be claimed by and in said declaration shall be the amount of the tolls paid to the defendant for the sending of the message which is the basis of this suit.

And the defendant further moves the court under section 1433, to order and direct the plaintiffs in this case that they shall so amend and reform the declaration as filed herein, as to strike therefrom and leave out of said declaration any and all claims for damages other than for tolls paid for sending said message which is the basis of this suit."

The court denied the motions to strike certain parts of the declaration and to reform the same, and overruled the demurrer /thereto. The defendant then filed the following pleas to the first and second counts of the amended declaration:

"1.   And says for a first plea, it is not guilty.

2.   And for a second plea the defendant says that it transmitted the message in the said counts in said declaration mentioned as said message was delivered to it.

3.   And for a third plea, defendant says as to the message in said counts in the declaration mentioned that on the 25th day of December, 1905, the plaintiffs, or someone in their behalf at or about to-wit, the hour of 12:40 p. m. called up the office of the defendant at Pensacola, Fla., by and over the telephone and that the call was answered by an employe of defendant and the person calling over the telephone thereupon directed that a cable be sent to Eastman, Cardenas, as follows, to-wit: 'closed' and that the defendant promptly transmitted the said message as it was delivered to it.

4.   And for a fourth plea, defendant says, as to the message in said counts in the declaration mentioned, that on the 25th day of December, 1905, the plaintiffs or some one in their behalf at or about to-wit the hour of 12:40, p. m. called the office of the defendant at Pensacola by and over the telephone and that the call was answered by an employe of defendant, and the person calling over the telephone thereupon directed that a cable message be sent and which was received by an employe of defendant as follows:    'Eastman, Cardenas closed,' and that the defendant promptly transmitted the said message as it was received by it."

The plaintiff demurred to the 3rd and 4th pleas, and moved to strike the 2nd, 3rd and 4th pleas as follows:

"Now comes the plaintiffs and move the court to strike the 2nd, 3rd and 4th pleas of the defendant upon the following grounds:

1.   They are equivalent to the general issue which has been pleaded.

2.   Said pleas are so framed as to prejudice, embarrass and delay the fair trial of this cause.

3.   The third and fourth pleas tender wholly immaterial issues.   And subject to the said motion to strike, the plaintiffs demur to the third and fourth pleas, and say each of said pleas is bad in substance because the

facts set forth do not constitute any defense.    They are not responsive to the declaration and undertake to set up transactions other than the one declared upon in the declaration.                    BLOUNT & BLOUNT & CARTER.
                    Attorneys for Plaintiffs."

The court sustained the demurrer and granted the motion to strike.

. On the 12th day of April, 1907, upon a trial of issues joined, a jury rendered a verdict in favor of the plaintiffs for $1,171.97.    The court denied a motion for a new trial.    Final judgment was entered, and the defendant sued out a writ of error.

*John E. Hartrige & Son,* for plaintiff in error.

*Blount & Blount & Carter,* for defendant in error.

PARKHILL, J., (*after stating the facts.*)—The first and third assignments of error complain of the action of the court in permitting the witness, John D. Eastman, to testify as to certain losses suffered by plaintiffs in effecting and performing a new charter of this vessel; the plaintiffs claiming that the new charter and the losses occasioned thereby were caused by the wrongful transmission of the telegram from Merritt to Eastman.  The losses testified to by Eastman consisted of expenses incurred by plaintiffs in endeavoring to effect a new charter for the vessel, additional expenditures, port charges and loss of time made necessary while entering upon and performing the new charter and losses and differences of freight money occasioned by the new charter. The defendant objects to the testimony of the witness because: 1.    The damages sought to be proved thereby are remote and speculative.    2.    The damages were not in contemplation of the parties at the time of the alleged making of the contract for the transmission of the said telegram.    The first objection is not argued, and will be treated as abandoned.

Under these assignments, it is contended by counsel for plaintiff in error that there was nothing in the wording of the telegram from Merritt to Eastman ("Eastman Cardenas Close") to suggest such damages or losses as testified to by Eastman, and no special circumstances were alleged or shown from which such special knowledge could be imputed to the defendant company. It is contended further that the defendant company cannot be charged with the information furnished by the message from Eastman to Merritt, ("offer 650 Tampa Nipe Bay. Answer quick"), because it was not shown that the same operator handled both messages, or that the operator sending the one message was familiar with the contents of the other message; and that a telegraph operator is a servant and not an agent of the company.

The testimony shows that Eastman was the captain and master of the schooner Doris, and plaintiffs were owners of this vessel. Merritt, one of the plaintiffs, was a ship broker and agent for the schooner at Pensacola, Florida. The Doris was employed in the lumber business between the gulf ports and the coast of Cuba. While this vessel was at Cardenas, Cuba, Eastman delivered to the defendant company the following cable message for transmission to Merritt:

"Cardenas. Dec. 24th, '05.
Merritt,
   Pensacola.
   Offer 650 Tampa Nipe Bay. Answer quick. Eastman."

This message was delivered to Mr. Merritt at his residence, by defendant's messager, before noon, about eleven o'clock, December 25th, 1905. Up to one o'clock on that day, the only operator in charge of and at work in defendant's office was H. B. Pinney. Upon receipt of this message that day, Merritt wrote on the back of it his intended reply, as follows: "Eastman, Cardenas, Close."

He then went to the telephone in his house and called up the Western Union office and asked for the operator. Pinney answered. Merritt asked if Pinney would take a message, and repeated the message: "Eastman, Cardenas, Close." He testified: "There was some difficulty in the operator understanding it, and I repeated it to him, and requested him to repeat it to me." Merritt testified that the operator repeated the message correctly, as it is written above. Merritt says: "I went down to the foot of the steps and handed the telegram upon the back of which I had written 'Eastman, Cardenas, Close' to the Postal boy, who happened to be at the house, and asked him if he was going down town. I had already asked the Western Union boy if he was going back, and he said, 'No,' he had some messages to deliver, and I asked the Postal boy—I requested him to take it to the Western Union and show it to the operator, and tell him that was the message I had just 'phoned him and bring me the original message back next morning." The "Postal boy" testified that he complied with Merritt's request, showing the message written by Merritt to the operator, who he did not identify, between half past twelve and one o'clock the same day. He testified that he showed the message to the man at the Western Union office and told him "Mr. Merritt 'phoned him before, and he wanted to make sure, and he said it was all right." The message was returned to Merritt by the boy the next morning. This message, reading as Merritt said he wrote it, was introduced in evidence.

Mr. Pinney testified that he was called to the 'phone to answer Merritt's call. Merritt said he had a cable he wanted to 'phone. "He telephoned it to me and I telephoned it back to him, repeated it back to him." Pinney said he understood the message to be: "Eastman—Cardenas—Closed," and then wrote out the message, as received by him, on a telegraph blank, and placed the same

on file—on the hook—to be sent. This message as offered in evidence reads as follows:

"Cable The Western Union Telegraph Company.
Received No.                  Time filed.                  Check.
'Phoned ·                     12:40, P. M.·
                              3 Pensacola, Chg. Merritt.
                              Pensacola, Fla. Dec. 25.
    Eastman, Cardenas Closed.
1. C. R. M.                                            60
At 12:52 P. M.                - Pensacola, Original."

Pinney testified that he received and filed this message at 12:40 P. M., that the figures 12:52 represent the time it was sent, that he did not send this message, that he went off duty about one o'clock that day, and was succeeded by another operator, one McGuire, who sent the message 'phoned by Merritt and written by Pinney, and that the Postal boy did not bring the message written by Merritt to the Western Union office while he was there.

We think the jury could reasonably conclude from the evidence that the "Postal boy" reached the Western Union office with the written message from Merritt before the 'phone message was transmitted by McGuire; for the boy said he handed the message written by Merritt to the man in the office, and showed him the message and told him Mr. Merritt 'phoned him before and wanted to make sure, and the man in the office said it was all right.

If the man in the office was McGuire, he saw both messages and learned the nature and importance of them, for though he may not have known, up to that time, anything about the earlier message from Eastman, the message from Merritt was written on the back of the message from Eastman.

Even if the company was not bound thus with notice to McGuire of the terms of the message from Eastman

before the transmission of the message from Merritt, we think there was sufficient evidence from which the jury could reasonably infer that Pinney knew the nature and importance of both messages. Pinney said there was no receiving clerk working in the office that day, which was a holiday. He seems to have been the only one working there until about one o'clock when McGuire came on duty. The message from Eastman was received by Merritt from the company's office while Pinney was on duty there. Pinney must have handled the Eastman message and learned the contents of it, for he sent it out to be delivered to Merritt, and Pinney knew the terms of the Merritt message for he received it over the 'phone. If Pinney, and not McGuire, received the written message from Merritt, by the hand of the Postal boy, he became acquainted with the Eastman message, upon which the Merritt message was written. If Pinney knew the contents of both messages, it would make no difference, so far as notice to the company is concerned, that McGuire sent the message from Merritt to Eastman without knowledge of the contents of the message from Eastman to Merritt; for Pinney wrote the Merritt message as sent by McGuire and that message was practically sent when it was written by Pinney and filed to be sent by McGuire. McGuire sent what Pinney wrote. We conclude, therefore, that the same operator handled both messages and was familiar with the contents of them.

Let us consider the contention that there was nothing in the wording of the telegram from Merritt to Eastman to suggest such damages or losses as testified to by Eastman, or that the injury alleged was not in the contemplation of the parties when the message was delivered for transmission.

The rule in this state, as to the measure of damages in actions against telegraph companies for negligence in

the transmisison or delivery of messages is that formulated in an early English case. Hadley v. Baxendale, 9 Exch. 341; "where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be either such as may fairly and substantially be considered as arising naturally, *i. e.* according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it." Western Union Tel. Co. v. Wilson, 32 Fla. 527, 14 South. Rep. 1. This rule is applied here whether the particular action is *ex contractu* or *ex delicto*.

In Western Union Tel. Co. v. Milton, 53 Fla. 484, 43 South. Rep. 495; the rule is stated thus: "in an action in tort against a telegraph company for the breach of a public duty in negligently transmitting an incorrect copy of a message delivered to it for transmission, the damages that can be recovered are for the loss or injury sustained by the plaintiff as a proximate consequence of the defendant's negligent act, which consequences were contemplated, or should have been contemplated, as probable or likely to follow the negligence."

It follows, therefore, that where the message as delivered for transmission, is in cipher and unintelligible except to the sender and addressee, and no explanation made to the operator as to its import and importance, the telegraph company is liable for default in transmitting it correctly to pay nominal damages only, or, at most, the sum paid for its transmission and delivery. Where the message affords the only evidence of its import and importance, and the company is not otherwise advised thereof, although it may be couched in unusual, abbreviated or technical language, yet, if it be sufficiently plain to indicate its nature and importance, that is, that it

31

relates to a business transaction of importance and that a pecuniary loss will probably result unless it is promptly and correctly transmitted, recovery will not be limited to nominal damages. Jones on Telegraph and Telephone Companies, 510; 2 Thompson's Comm. on Neg. Sec. 2469; 3 Southerland on Damages, Sec. 970; 27 Am. & Eng. Ency. Law (2nd ed.) 1063.

It is not essential that the message disclose all the details of the transaction to which it relates, nor the particular business intended. The rule in Hadley v. Baxendale, therefore does not require that the parties *must* have contemplated the *actual* damages which are to be allowed, but such as may reasonably be *supposed* to have been contemplated. It is not essential that the particular loss or injury sustained was contemplated, but the company is liable if the loss sustained should have been contemplated as a probable and proximate result of its negligence. Western Union Tel. Co. v. Milton, *supra*. As was well said by Chief Justice Earl in Leonard v. N. Y. etc. Tel. Co., 41 N. Y. 544, text 567: "Parties entering into contracts usually contemplate that they will be performed , and not that they will be violated They very rarely actually contemplate any damages, which would flow from any breach and very frequently have not sufficient information to know what such damages would be. As both parties are usually equally bound to know and be informed of the facts pertaining to the execution or breach of a contract, which they have entered into, I think a more precise statement of this rule is, that a party is liable for all the direct damages which both parties to the contract would have contemplated as flowing from its breach, if at the time they entered into it, they had bestowed proper attention upon the subject, and had been fully informed of the facts."

When the message does not contain words sufficiently plain to indicate its nature and importance, but the company acquires this knowledge from extrinsic facts at the

time the contract of sending is made, it will be liable for
a failure to send the message accurately and pr(
just the same as if it showed this fact on its face.   In
determining whether the company had information of the
importance of the message, or the necessity for its pron·pc
and correct transmission, the court and jury may consider
the surrounding circumstances, particularly the fact that
the operator knew or ought to have known of the general
nature of the message from other messages handled by
him, relating to the same transaction.   Western Union
Tel. Co. v. Milton, *supra;* 27 Am. & Eng. Ency. Law
(2nd ed.) 1064.

Where there is doubt as to whether the words con-
tained in the message were sufficient to indicate its im-
portance, and whether this is true with respect of the
operator, or whether the latter was made more certain
of its nature and importance by extrinsic facts, are ques-
tions for the jury.   Jones on Telegraph and Telephones,
Sec. 527; Pope v. Western Union Tel. Co., 4 Ill. App.
531.

We do not think the message, reading, "Eastman,
Cardenas Close," which, it is charged, the defendant
negligently transmitted, is sufficiently plain to have in-
dicated to the company's agent that it was of importance,
or to have apprised the company that a pecuniary loss
would probably result from an incorrect transmission of
it.   But this message, read in the light of the evidence
furnished by the earlier message, "Offer 650 Tampa
Nipe Bay, answer quick," clearly showed to the company's
operator that it related to a business transaction of im-
portance and that a pecuniary loss would probably result,
unless it was promptly and correctly transmitted.   The
earlier message from Eastman to Merritt submitted an
offer of some kind.   The words "offer 650 Tampa Nipe
Bay" show that the offer was about some business matter
of pecuniary nature concerning the places named.   The

words "answer quick" show the importance of the business matter, and the necessity for promptness and correctness in the transmission and delivery of the message. The request for a quick answer concerning this offer clearly called for a prompt acceptance or rejection of the offer. The message from Merritt to Eastman was an acceptance or rejection of this important business offer. Besides the information furnished by the language of these messages, the evidence in this case shows that Merritt was in the habit of sending messages by the defendant company's wire. He was so well and favorably known to the company that he had an arrangement with the company by which the tolls on his messages were charged to him and collected from him at stated periods. He was a trusted customer of the company.

It is not essential, as we have seen, that the message disclose all the details of the transaction to which it relates, or the particular business intended. Suppose the words of the message unexplained did not inform the operator that Eastman was the master of the ship Doris, and that he had been offered $6.50 per thousand feet for conveying lumber from Tampa to Nipe Bay, would that justify him in contemplating, within the rule in the Hadley case, no damages as a result of his negligence or omission of duty in promptly and correctly sending it forward? As was said in Postal Tel. Cable Co. v. Lathrop, 131 Ill. 575, 23 N. E. Rep. 583, S. C. 19 Am. St. Rep. 55: "It certainly cannot be contended that the agent must be informed of all the facts and circumstances pertaining to a transaction referred to in a telegram, which are known by the parties themselves, to make his company liable for more than nominal damages. If it should be so held, the telegraph would cease to be of practical reliability in the commercial world."

The messages in this case are not cipher messages They were sufficiently explicit and clear to charge the

company with substantial damages, and the court did not err in permitting the witness Eastman to state these damages.

The second assignment of error is, that the court erred in permitting the witness Eastman to give the meaning of the following telegram received by him of the 23rd day of December, 1905, directed to the schooner Doris:

"Havana Done 23,
Schooner Doris.    Offer you 650 Tampa Nipe. Answer.    Pratt."

The plaintiff had introduced testimony, by the witness Eastman, that he was captain of the schooner Doris; that the schooner was engaged in the lumber trade between the coast of Cuba and the Gulf Ports, and that Pratt was in the ship brokerage business at Havana, and broker for Eastman; that witness had received the above telegram, and was familiar with the business of making charter parties, and that said telegram had a well understood meaning between people engaged in the business of making charter parties at that time.    The plaintiffs then propounded to Eastman the following question: "State what that meaning was."    Defendant objected to the interpretation of the witness in regard to the meaning of the telegram.    The court overruled the objection and the witness answered:    "*That* meaning is that he would pay me $6.50 per thousand for a cargo of lumber from Tampa to Nipe Bay."

The witness did not give his construction or interpretation of the message.    He interpreted the writing in accordance with the recognized meaning of the words as used in the trade or business out of which the transaction arose.    The explanations were not inconsistent with the written terms.    The abbreviated expressions and figures in the telegram being a sort of mercantile shorthand were intelligible to the parties themselves and to those of the particular business in which the parties were

engaged, but were unintelligible to a certain extent to persons not somewhat familiar with such business. The witness merely translated the writing, for the benefit of the jury, from the language of the trade into the language of people generally. There was no error. 9 Ency. Ev. 390; Maurin v. Lyon, 61 Minn, 257, 72 N. W. Rep. 72, S. C. 65 Am. St. Rep. 568; Western Union Tel. Co. v. Collins, 45 Kan. 88, 25 Pac. Rep: 187, S. C. 10 L. R. A. 515; Lane v. Union Nat. Bank of Massillion, 3 Ind. App. 299, 29 N. E. Rep. 613; Hinote v. Brigman, 44 Fla. 589. 33 South. Rep. 303.

The fourth assignment of error challenges the correctness of the following instruction: "The burden of proving that a telephone message was transmitted before a written message confirming such telephone message was received by defendant, if such written message was received by it, is upon the defendant, and a mere notation of time sent, made by defendant's agent on the telephone message as written down by an operator of the defendant, is not evidence of such fact, where such notation was not made in the presence of the sender of the message."

We think the court erred in giving that part of the instruction which had the effect of withdrawing from the consideration of the jury the notation of time when the message was sent.

Mr. Pinney, the telegraph operator, testified that he received the telegraph message as "closed," wrote the message on a telegraph blank, and put the message on the hook that it might be sent. He put the figures 12:40 on the message at the time he received it. He did not send the message and was not present when it was sent. He said the message was sent by McGuire, who came on duty as Pinney went off duty. The message, when introduced in evidence showed the figures 12:52 written thereon. Pinney was asked what the figures meant. He testified that the figures 12:40 show'd the time he received

the message for transmission, and the figures 12:52 represented the time when the message was sent. This testimony was not objected to by the plaintiffs. They sought to withdraw it from the consideration of the jury by the charge given at their request.

In support of the charge counsel say that "in order to control the effect of the notation or memorandum made on the paper by another person not a witness, without the knowledge of plaintiffs, requested an instruction that the mere notation of time sent made under such circumstances by a person not a witness was not evidence of the fact. The instruction withdrew nothing from the jury except this mere notation, and, as it was purely hearsay, it was proper to so withdraw it. The request to charge was equivalent to a motion to strike, and giving it, equivalent to granting the motion." Counsel contend that the principle announced in Roberson v. State, 40 Fla. 509, 24 South. Rep. 474, headnote 12, is applicable here. The language of the headnote referred to is as follows: "If evidence introduced tends to prove an irrelevant or immaterial fact, as well as one material and relevant, the court properly refuses an instruction withdrawing such evidence entirely from the consideration of the jury, but errs if it refuses an instruction properly framed, limiting the consideration of such evidence by the jury, to its legitimate purpose." The evidence furnished by the notation of the time sent as testified by witness was not irrelevant or immaterial. Upon the question of the negligence of defendant, it became important to know whether the written message confirming the telephone message was received by defendant before the telephone message was transmitted. The charge given by the court placed the burden of proving this fact upon the defendant; and yet the same charge withdrew evidence of the time when the telephone message was sent from the consideration of the jury. It is true that the witness did not

himself write the figures 12:52, the notation of time when the message was sent. It is true another operator made this notation. But the plaintiff made objection to this testimony on the ground of hearsay, or that the best evidence should be produced. No objection to the admission of this testimony was made at all. The evidence was admitted as it were by consent. Sims v. State, 54 Fla. 100, 44 South. Rep. 737; McSwain v. Howell, 29 Fla. 248. Had an objection of this kind been made the defendant would have been given an opportunity to produce the best evidence or to invoke the rule insisted upon by the plaintiffs when they successfully asked to have explained to the jury the meaning of the abbreviated expressions and figures found in the telegram from Pratt to the schooner Doris. It is not clear that Pinney, who was shown to be a telegraph operator, was not competent, to explain the meaning of the notation of time written on the message by the operator who worked in the same office with him.

The fifth, sixth, seventh and eighth assignments of error have been argued and will be considered together. The defendant requested the court to give the following instruction: "(12) If you find from the evidence that on or about the 25th day of December, 1905, the plaintiffs or some one in their behalf, at about the hour of 12:40, p. m. called up the office of the defendant at Pensacola, Florida, by and over the telephone, and that the call was answered by an employe of the defendant, and the person calling over the telephone thereupon directed that a cable be sent in words and figures as follows, to-wit: 'Eastman, Cardenas, Closed,' and that the message was transmitted as delivered to the defendant, then the defendant is not guilty." But the court added to said instruction, after the word "closed," the words "and that there was no written or other notice to the defendant that the final word was "close," and gave the

said instruction with the said additional words inserted therein, to which action of the court the defendant did then and there except.

This charge as requested omitted reference to a part of the testimony. The addition made by the court supplied this defect, but it would be safer to properly confine the time when the written or other notice was given to defendant that the final word was "close," if it be found by the jury that such notice was given.

This disposes of the objections to similar additions made by the court to other charges given at request of defendant.

The ninth and tenth assignments challenge the sufficiency of the evidence to support the verdict. As this case must be sent back for another trial, we will not express an opinion on the sufficiency of the evidence.

The eleventh and twelfth assignments of error are based upon the action of the court in overruling the motion of defendant to strike certain parts of the amended declaration. The parts of the amended declaration sought to be stricken by this motion, explanatory of the meaning of the telegrams are not improperly used to make the declaration more intelligible to the court and jury, and to make out the cause of action of plaintiff.

Another part of the amended declaration sought to be stricken alleges that the offered charter would have been closed and the voyage would have been performed had the telegram been transmitted and delivered to Eastman in the same language as it was delivered to the defendant. This allegation of the declaration is proper in order to show the proximate cause of the injury, as the plaintiff must allege that the negligence of the defendant in transmitting the message was the proximate cause of the injury. 21 Ency. Pl. & Pr. 514.

The thirteenth and fourteenth assignments rest upon the action of the court in overruling the demurrer to the

original and amended declaration.    The    amendment cured the defect in the original declaration, and we will consider only the objections urged to the amended declaration.

The first ground of demurrer is too general.    Eastman was not required to "take any care to ascertain the correctness or incorrectness of the message received in answer to his cablegram."    This disposes of the eighth ground of the demurrer.

The declaration shows that the person who offered to charter the    vessel "Doris," "was able . . . to charter the said vessel for $6.50 per thousand feet of lumber which could be carried as a cargo by said vessel from Tampa to Nipe Bay."    This disposes    of    the    ninth ground of the demurrer.

The tenth ground of the demurrer is as follows: "The declaration does not show that the person alleged to have made the offer of six dollars and fifty cents per thousand feet for the vessel from Tampa to Nipe Bay, ever refused to make and carry out said contract, or after the time the captain of the schooner ascertained that the mistake had been made in the transmission of the message to him from Tampa, as alleged in the declaration." The plaintiff does not claim damages for a refusal to carry out a contract by the person offering to charter the schooner "Doris."    The declaration alleges that the *captain* of aid vessel declined the offer of the person to charter the said vessel, because the defendant company negligently and carelessly altered the message transmitted and delivered to the captain that he understood by the message delivered to him that he was not authorized to close the charter offered to him.    This disposes of this ground of the demurrer.

We think the declaration does allege "that the mistake said to have been made in the telegram as delivered to the captain of the schooner was caused by the negli-

gence of the company," and so falls the fourteenth ground of the demurrer.

The other grounds of demurrer relied upon seem to be directed to the bill of particulars and to the question of damages. A demurrer does not lie to a bill of particulars. A demurrer does not reach the question of damages, if the declaration shows a valid claim to any damages whatever. Borden v. Western Union Tel. Co., 32 Fla. 394, 13 South. Rep. 876; Cline v. Tampa Water Works Co., 46 Fla. 459, 35 South. Rep. 8; Western Union Tel. Co. v. Wells, 50 Fla. 474, 39 South. Rep. 838; 7 Am. & Eng. Ann. Cas. 531; Western Union Tel. Co. v. Milton, 53 Fla. 484, 43 South. Rep. 495, and cases there cited.

The fifteenth and sixteenth assignments of error are predicated upon the denial by the court of defendant's motion to compel the plaintiffs to amend and reform their original and amended declaration, so that it would claim as damages only the amount paid for sending the telegram.

When the message is taken with the one to which it was a reply, it is sufficient to apprise the defendant that it related to a business matter of importance and to require attention to its consequences. Under these circumstances if the negligence of the defendant was the proximate case of the loss of the plaintiff, the defendant is liable for all the injurious consequences of the negligence that should have been contemplated, if such attention had been given to the message as its terms indicated it was entitled to. The motion was properly denied. The motion, however, should have stated that the declaration was so framed as to prejudice, embarrass or delay a fair trial of the case.

The judgment is reversed.

SHACKLEFORD, C. J., and WHITFIELD, J., concur.

COCKRELL, J., (*concurring.*)

I concur in the main with the opinion prepared by Mr. Justice PARKHILL.

There is a difficulty disclosed on the record though not properly presented that gives me much concern. I cannot free my mind from the thought that the real negligence causing the loss was first the selection by Merritt of the inapt word "close," which as written presents ambiguous meanings, and, secondly, the peculiar construction placed by Eastman upon the word "closed." No cipher is involved, merely the usual meaning of ordinary English words, and it would seem that the latter word presents as clearly the meaning intended to be conveyed as the former.

HOCKER, J., (*concurring.*)

In the case of Western Union Telegraph Company v. Milton, 53 Fla. 484, 43 South. Rep. 495, this court reaffirmed the rule that if a declaration entitled the plaintiff to recover even nominal damages a demurrer thereto will not lie, even though it claims other or greater damages than the case made may legally entitle the plaintiff to recover. Such a question is properly raised by objections to testimony at the trial, by instructions to the jury, or by requiring the declaration to be reformed.

The question of the sufficiency of the declaration to entitle the plaintiffs to recover other than nominal damages was, I think, properly raised by objections to some of the testimony offered and which are embraced in the assignments of error.

This court has repeatedly held that a declaration in an action at law should allege distinctly every fact that is essential to the plaintiffs' right of action. Milligan v.

Keyser, 52 Fla. 331, 42 South. Rep. 367; Royal Phosphate Co. v. VanNess, 53 Fla. 135, 43 South. Rep. 917.

In the instant case the telegram sent by Eastman, the master of the vessel from Cardenas, to Merritt, at Pensacola, Florida, is as follows: "Offer 650 Tampa Nipe Bay. Answer quick." The answer was "close;" and it is alleged that this was incorrectly sent "closed." It seems to me that these words unexplained, are unintelligible to the ordinary reader, and do not convey to the mind any notion whatever that Eastman was the master of the ship "Doris," and that he had been offered $6.50 per thousand feet for carrying lumber from Tampa to Nipe Bay, or that they related to a business transaction of much importance, and that a loss would probably result unless they were properly and correctly transmitted. There is no allegation in the declaration that the agent of the defendant knew its import or that he was advised of circumstances which would put him on notice that the message involved matters where considerable values were involved. In the case of Western Union Tel. Co. v. Milton, *supra,* the declaration sets out the telegram from John Milton to Geo. H. McFadden & Brothers, Agency, and alleges that "Geo. H. McFadden & Bros. Agency was engaged in the business of purchasing and selling cotton on and before said date (message' and the said words one hundred and seventy-five meant 175 bales of cotton which plaintiff had that day purchased for the account of the said Geo. H. McFadden & Bros. Agency, and that Geo. H. McFadden & Bros. Agency *was engaged in dealing in cotton, and that plaintiff had been engaged in shipping cotton to and buying cotton for said agency was well known to the said defendant.* In the body of the opinion, p. 500 it is said: "It is further alleged that defendant well knew that George H. McFadden & Brothers Agency was engaged in dealing in cotton, and that the plaintiff had been engaged in shipping cotton to and buying cotton for said

agency." This shows how the court understood the declaration in that case. See also p. 505.

In the case of Western Union Tel. Co. v. Wilson, 32 Fla. 527, 14 South. Rep. 1, this court held: "The liability of a telegraph company for failure to transmit and deliver a message written in unexplained cipher, or in language unintelligible except to those having a key to its hidden meaning, is for nominal damages, or at most, for the sum paid as the price for its transmission and delivery." In that case this court held the rule in Hadley v. Baxendale, 9 Exch. 341, applicable to suits on the contracts of telegraph companies for the transmission of messages overruling the case of Western Union Tel. Co. v. Hyer Bros., 22 Fla. 637. The court, referring to the decided cases, says the great weight of authority favors this view. Since the case of Western Union Tel. Co. v. Wilson was decided, the Supreme Court of the United States in Primrose v. Western Union Tel. Co., 154 U. S. 1, 14 Sup. Ct. Rep. 1098. has adopted the same rule. See, also, Hill v. Western Union Tel. Co., 42 S. C. 367, 20 S. E. Rep. 135; S. C. 46 Am. St. Rep. 734, and note. This doctrine is recognized in Western Union Tel. C. v. Milton, *supra,* on page 501 of the opinion where it is said: "In an action in tort against a telegraph company for breach of a public duty in negligently transmitting an incorrect copy of a message delivered to it for transmission, the damages that can be recovered are for the loss or injury sustained by the plaintiff as a proximate consequence of the defendant's negligent act, which consequence the parties contemplated, or should have contemplated, as probably to follow from a breach of the duty."

In the case of Western Union Tel. Co. v. McKinney. 2 Tex. App. Civil Cases, § 644, the message was "Twenty lumps, five looms, five buffs, five bucks." This message was understood by the sender to mean, and would

have been understood by the person to whom it was addressed to mean, that the latter should forward to the former certain linen goods, which line of goods the sender was packing.    It is said in the opinion that the message does not disclose its meaning except to the person to whom it was directed, and was in effect a cipher message, and did not upon its face notify the company that it was of pecuniary value or importance.    The court then refers to the rule in Hadley v. Baxendale as adopted in that state and as applicable to the case.    The court then says:    "It is, therefore the law of this state * * * that in the case of a cipher telegram the sender can only recover for a failure to send or deliver, nominal damages, *unless he alleges and proves that the company,* at the time of receiving such telegram for transmission had knowledge that it was of value and importance.

In the case of Capers v. Western Union Tel. Co., 71 S. C. 29, 50 S. E. Rep. 537, it is held that in order to recover damages from a telegraph company for delay in delivery of a telegram it is essential where a recovery is based on its special nature, that knowledge of its special importance should appear from the language of the telegram, or that it be alleged that the defendant was otherwise informed of its special importance.    In this case the telegram was in these words:    "Beaufort, S. C. 2-29, 1904.    To C. W. Butler.    No letter received.    Send to Yemassee conductor in morning.    W. E. Capers." See, also, 21 Ency. Pl. & Pr., 516.

Considering the unintelligible character of the words used in the telegrams in the instant case, I think that in order for the plaintiffs to be entitled to recover other than the cost of sending the telegrams or nominal damages, the declaration should have alleged that the defendant's operator was informed of the meaning of the messages or that they related to a matter of business of importance, and that this should have been proven.    In

so holding I am in line with the rule of this court which we have referred to as established in the cases of Milligan v. Keyser and Royal Phosphate Co. v. VanNess, *supra,* in which it is held that in an action at law a declaration should allege distinctly every fact that is essentail to the plaintiff's right of action. In other respetcs, I concur in the opinion of Mr. Justice Parkhill.

TAYLOR, J.—I concur in the foregoing opinion of Mr. Justice Hocker, except that I think that the rule in Hadley v. Baxendale requires that the message involved in such cases in the absence of explanation of its meaning, must be so intelligible that the telegraph company can be informed thereby, not only that it relates to a matter of "business importance," but that it should be such that the company may *contemplate* and see from its terms *what damages,* will probably result from their failure to transmit it as they contract to do. Any other construction of the rule practically emasculates it, and practically overrules the case of West. U. Tel. Co. v. Wilson, 32 Fla. 527, 14 South. Rep. 1, where the reason of the rule is discussed at length.